# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MORRIS BART, LLC** | **CIVIL NO. 2:23-cv-01453** |
| **V.** | **NO. 23-1453** |
| **MCCLENNY MOSELEY & ASSOCIATES, PLLC** | **SECTION "I" DIVISION (5)** |

### MEMORANDUM IN SUPPORT OF
### MMA'S RULE 12(b)(1) and 12(b)(6) MOTION TO DISMISS COMPLAINT FOR
### <u>LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM</u>

**NOW COMES**, MMA, PLLC (formerly known as McClenny, Moseley & Associates, PLLC) ("MMA"), through undersigned counsel, who respectfully files this memorandum in support of its Rule 12(b)(1) and 12(b)(6) motion to dismiss Morris Bart, LLC's complaint for lack of subject matter jurisdiction and for failure to state a claim on which relief may be granted.

Even assuming that the Court has diversity jurisdiction over the two substantive claims asserted by Morris Bart, LLC ("Morris Bart"), both claims must be dismissed for failure to state a claim. Morris Bart fails to allege sufficient facts that, if accepted as true, entitle Morris Bart to relief. As previously explained,[1] the two claims predicating Morris Bart's request for preliminary injunctive relief fail as a matter of law. First, though the Louisiana legislature permits "aggrieved parties" and specially-named prosecuting authorities to pursue civil proceedings against persons allegedly engaged in the unauthorized practice of law, the legislature forbids "an attorney or a law firm" like Morris Bart from doing so. Morris Bart's claim for MMA's allegedly unauthorized practice of law is thus frivolous and must be dismissed with prejudice at its cost.

---

[1]     *See generally* R. Doc. 10.

And, second, though Louisiana courts recognize a limited cause of action for intentional interference with business relations—so limited that there are no reported cases where any party has been held liable for the tort—Louisiana does not recognize a cause of action for *negligent* interference with business relations or for *attempted* interference with business relations.  Morris Bart has not and cannot plead facts on separate mandatory elements of its intentional interference claim: (i) there are no alleged facts indicating that MMA acted with malice towards Morris Bart— all alleged facts at most sound in negligence; (ii) there are no alleged facts that MMA *actually prevented* Morris Bart from engaging with the third-party clients.  Either independently dooms this claim, which should be dismissed with prejudice.

Additionally, the Court must dismiss Morris Bart's remedy under the Declaratory Judgement Act because Morris Bart has not and cannot carry its burden to show that any such underlying claims are justiciable.  Morris Bart has suffered no concrete and particularized harm and has no legally cognizable interest in pursuing such claims vicariously on behalf of hundreds of non-parties.  Finally, even if Morris Bart attempts to carry its burden to show that it has standing, that such claims are ripe, and that this Court has subject matter jurisdiction over each claim, the Court should exercise its ample discretion to decline to exercise its limited jurisdiction over Morris Bart's "claims" under the Declaratory Judgment Act for all of the reasons set forth herein.

## <u>BACKGROUND</u>

Morris Bart, a Louisiana plaintiffs' firm ubiquitous for its advertisements promising "One Call That's All," or "One Click, That's It," took over the representation of many former clients of MMA, a Texas-based plaintiffs' firm, in the aftermath of media reports of judicial scrutiny into lawsuits filed by MMA in Louisiana.  Seeing an opportunity in MMA's unseating, Morris Bart quickly launched advertisements beyond its typical onslaught specifically targeting former MMA

clients.  Eventually, "hundreds of former MMA clients" contacted Morris Bart, which substituted in for MMA, voluntarily undertaking the representation of clients in what Morris Bart characterizes as "the mess MMA left in its wake."  R. Doc. 1 at ¶ 53; R. Doc. 3-1 at p. 5.

Disclaiming monetary damages and asking this federal court to render advice on MMA's general compliance with professional responsibility standards, Morris Bart has nominated itself to clean up the "mess."  On May 1, 2023, Morris Bart filed a Complaint for Injunctive and Declaratory Relief in this Court against MMA seeking to enjoin the latter from allegedly interfering with clients and generally engaging in the unauthorized practice of law.  R. Doc. 1.  Morris Bart also seeks declarations that MMA's allegedly vast "client solicitation schemes" and its general failure to abide by certain Louisiana professionalism rules renders each and every contract with hundreds of its former clients "absolutely null," and that MMA is precluded from recovering any attorneys' fees from work performed on behalf of those clients on those contracts.

Contemporaneously, Morris Bart filed a motion seeking a temporary restraining order ("TRO") and preliminary injunction.  R. Doc. 3.  After considering MMA's opposition to the motion and following a status conference, the Court denied as moot the motion for TRO and preliminary injunction, and issued an order on consent on certain issues pertaining to furnishing certain client files as well as efforts to cease client communications.  R. Doc. 13.

MMA now timely files this Rule 12 motion, seeking to dismiss Morris Bart's claims for lack of jurisdiction and for failure to state a claim upon which relief may be granted.  First, the Court should dismiss Morris Bart's purported remedy under the Declaratory Judgment Act for lack of jurisdiction because Morris Bart has not and cannot carry its burden to show that such claims are justiciable:  Morris Bart itself lacks an injury-in-fact to request judicial declarations on behalf of hundreds of non-party clients, and such claims lack sufficient ripeness for decision; thus, the

Court lacks jurisdiction over Morris Bart's requested vicarious remedy. Alternatively, if the Court finds that it has jurisdiction to reach Morris Bart's declaratory judgment "claims," the Court should exercise its ample discretion to dismiss such claims, which are fact-intensive and client-specific. Second, Morris Bart's two Louisiana-law based substantive claims should be dismissed with prejudice for failure to state a claim upon which relief may be granted. Because leave to amend would be futile, if it is requested, it should be denied.

## LAW AND ANALYSIS

I.      **Louisiana's Regime for Addressing and Remedying Attorney Negligence and the Unauthorized Practice of Law Does Not Countenance Private Law Firm Vigilante Regulation—Nor Do Settled Justiciability Principles Oblige to Provide a Federal Forum Absent a Case or Controversy.**

Like other states, Louisiana has an interest in regulating the practice of law. As this Court has observed, Louisiana created the Louisiana State Bar Association, an "integrated" and "mandatory" bar association, "to promote and assist the regulation of the practice of law, improve the quality of legal services, advance the science of jurisprudence, promote the administration of justice, uphold the honor of the Courts and of the profession of law including Louisiana's civil law system, and, generally, to promote the welfare of the profession in the State." *Boudreaux v. Louisiana State Bar Ass'n*, 620 F. Supp. 3d 440, 446-47 (E.D. La. 2022)(quoting La. Sup. Ct. R. XVII, § 6), *appeal filed* September 6, 2022. It is the Louisiana Disciplinary Board that administers Louisiana's attorney discipline system, pursuant to Louisiana Supreme Court Rule XIX. *Id.* at 447. And, the state legislature has seen fit to enact legislation to deter, punish, and provide redress for those aggrieved by others' unauthorized practice of law. La.R.S. §§ 37:213, 213.1. As for redress, the legislature confers on an "aggrieved party," the Louisiana attorney general, the Louisiana State Bar Association, or a "district attorney" the right to file a petition to enjoin actors practicing law without state authorization. La.R.S. § 37:213.1(C). Critically, the legislature

expressly excludes "an attorney or a law firm" from the definition of "aggrieved party."  *Id.* at §

37:213.1(2)("The term 'aggrieved party' shall not include an attorney or a law firm.").[2]

In spite of these procedures, Morris Bart, a private Louisiana law firm, filed this federal

lawsuit—which expressly disclaims any monetary damages—in favor of seeking (i) advisory

declarations that a Texas law firm's alleged practices and business relationships with other entities

violate Louisiana's professional responsibility standards and constitute the unauthorized practice

of law, as well as (ii) to enjoin that Texas law firm from the unauthorized practice of law.  As the

only other substantive claim asserted, this plaintiff law firm, Morris Bart, seeks additional

injunctive relief predicated on an attempt to allege intentional interference with business

relations—an intentional tort so limited and difficult to allege and prove in Louisiana that the cases

addressing the tort observe that there are no reported cases holding any party liable for such a cause

of action.  This is unsurprising because, to succeed, a plaintiff must allege and prove both that the

defendant acted not with merely for-profit motives but with actual malice *and* that the defendant

actually prevented the plaintiff from dealing with a third party (here, allegedly any one of hundreds

of clients).  Finally, Morris Bart seeks declaratory relief under the Declaratory Judgment Act.  But

it does not seek purely legal declarations.  And the declarations it asks this Court to decree do not

even concern *its own legal rights or injuries* vis-à-vis the Texas law firm defendant; rather, it seeks

sweeping fact-laden declarations concerning the rights of hundreds of its clients—none of whom

are parties to this lawsuit—that the Texas law firm engaged in the unauthorized practice of law

and otherwise violated Louisiana professional responsibility rules vis-à-vis the hundreds of

third/non-party clients.  To be sure, *clients* suing former lawyers is nothing novel and, indeed,

---

[2]     Of course, aggrieved parties include clients, who may redress attorney negligence grievances through litigation against the allegedly negligent attorney. Supplementary enforcement and discipline may be effectuated in the context of discrete cases or controversies in federal courts, which are empowered inherently, by statute, and by rule to sanction attorney misconduct occurring within the context of particular cases within their jurisdiction.

presently there are pending lawsuits against MMA (and other defendants not parties here), including at least two class action lawsuits by former or putative MMA clients, in which the putative class representatives allege, among other things, the unauthorized practice of law by and against MMA, a roofing contractor, and an advertising tech firm.  Those client-prosecuted class actions allege damages and challenge the very "client-solicitation schemes" for which Morris Bart *in its private capacity as a law firm* seeks (vicarious) declaratory relief from this federal court.

This context illustrates that one private law firm's efforts to enforce another's general compliance with state-law professional responsibility standards or "unauthorized practice" is not a federally cognizable case or controversy.

## II.    Rule 12(b)(1) and (b)(6) Standards

Rule 12(b)(1) motions challenge the district court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Bankers Ins. Co. v. Williams*, No. 20-3417, 2021 WL 1517905, at *2 (E.D. La. Apr. 15, 2021)(Africk, J.)(quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  Lack of subject matter jurisdiction may be found in (1) the complaint; (2) the complaint supplemented by undisputed facts of record; or (3) the complaint supplemented by undisputed facts and the Court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)(citation omitted).  Morris Bart, the party invoking the Court's jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss. *Id.*  "*That* party must prove jurisdiction by a preponderance of the evidence." *Rodrigue v. Magnus*, No. 20-1240, 2021 WL 1564417, at *2 (E.D. La. Apr. 21, 2021)(Africk, J.)(citation omitted, emphasis added).

Whereas Morris Bart's vicarious declaratory judgment remedy should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), Rule 12(b)(6) supplies the standard to resolve MMA's motion to dismiss Morris Bart's two substantive claims, both of which should be dismissed for failure to state a claim.

Rule 12(b)(6) authorizes dismissal of a complaint, or any part of it, for failure to allege any cognizable legal theory, or for failure to allege facts in support of its claim that would entitle it to relief. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Together, these rules demand 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *JMC – Tran Properties v. Westchester Surplus Lines Ins. Co.*, No. 22-4727, 2023 WL 2527168, at *2 (E.D. La. Mar. 15, 2023)(Africk, J.)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In assessing a Rule 12(b)(6) motion, the Court must accept all "factual allegations in the complaint as true, [but it is] not bound to accept as true a legal conclusion couched as a factual allegation" or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the proper focus is on factual content. Indeed, "the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of *each element* of the plaintiffs' claim." *JMC – Tran Properties,* 2023 WL 2527168, at *2 (citations omitted, emphasis in original).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Though less than a "probability requirement," the plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*  (internal quotations omitted).  Where a plaintiff fails to nudge his "claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Twombly,* 550 U.S. at 570.

Morris Bart's Complaint fails these standards.

**III.  Morris Bart's Vicarious Declaratory Remedies on Unadjudicated Fact-Laden Issues Should Be Dismissed As Non-Justiciable Because Morris Bart Has No Legally Cognizable Interest in Any Underlying Cause of Action between MMA and MMA's Former Clients. Alternatively, the Court Should Decline to Exercise Jurisdiction Over the Declaratory "Claims."**

When a Rule 12(b)(1) motion is filed along with other Rule 12 motions, the Court "should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.[3]  For each claim it asserts, Morris Bart bears the burden to establish this Court's subject-matter jurisdiction as well as its standing to proceed in federal court.

A.  The Declaratory Judgment Act Is Remedial Only and Unavailable to an Uninjured Plaintiff that Lacks a Cognizable Legal Interest in the Remedy Sought.

"When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019)(quoting *Orix*

---

[3]      Given that MMA's jurisdictional challenge presently is directed to dismissing without prejudice Morris Bart's "claims" for declaratory relief, the Court need not address the Rule 12(b)(1) arguments first.  However, given the cohesive burden borne by Morris Bart (to establish as to each claim that the amount-in-controversy requirement for diversity jurisdiction is met as well as to establish that it has standing to pursue declaratory relief), addressing the Court's lack of jurisdiction over the declaratory judgment "claims" is a sensible starting point.  MMA does not press a diversity jurisdiction challenge.  Regardless, "because it involves a court's power to hear a case," subject matter jurisdiction cannot be waived, forfeited, or conferred by the parties' consent.  *See United States v. Cotton*, 535 U.S. 625, 630 (2002).  And, the absence of any facts suggesting how the amount-in-controversy requirement is met looms large and renders proceeding in this litigation perilous for all unless and until jurisdiction is established.

*v. Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).  In this mandatory inquiry, "[t]he court *must* ask":

> (1) whether an "actual controversy" exists between the parties in the case;
>
> (2) whether it has authority to grant declaratory relief; and
>
> (3) whether to exercise its broad discretion to decide or dismiss the declaratory judgment action.

*Id.* (internal quotations omitted, emphasis added).[4]  This three-step inquiry is anchored to the text of the Declaratory Judgment Act,[5] which provides:

> [I]n a case of actual controversy within its jurisdiction … any court of the United States … *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added).  This statutory text illuminates the Court's ultimate discretion to entertain such an action, provided that the mandatory prerequisites are satisfied (i.e., case or controversy and subject matter jurisdiction).

Though the Act's "['interested party'] language indicates that a party who has an interest in the outcome of future litigation can petition the court for a declaration of its rights and liabilities," it is settled that "the Act does not extend to all possible interests a party may possess." *Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990).  To be sure, "only parties with *legal interests* threatened in an actual

---

[4]    Incidentally, this three-step analysis is mandatory regardless of whether there is a pending state-court action and regardless of the stage of the federal-court litigation (that is, whether the declaratory judgment remedy is challenged on a Rule 12 motion or whether the Court reaches the merits stage of litigation).  *See, e.g., Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003)("In analyzing whether to decide or dismiss the declaratory judgment suit, … [a] federal district court must" apply three-step analysis, and further observing that "there was no pending state court action"); *Boudreaux v. Louisiana State Bar Ass'n*, 620 F. Supp. 3d 440, 451-52 (E.D. La. 2022)(Africk, J.)(applying three-step analysis in findings of fact and conclusions of law issued in resolving bench trial), *appeal filed* 9/6/22; *Bankers Ins. Co. v. Williams*, No. 20-3417, 2021 WL 1517905, at *2 (E.D. La. Apr. 15, 2021)(Africk, J.)(applying three-step analysis to claims for declaratory relief challenged in Rule 12(b)(1) motion).
[5]    It likewise aligns with the Act's purpose: "to allow 'parties, threatened with liability, but otherwise without a satisfactory remedy, an early [and expedient] adjudication of an actual controversy.'"  *See Braidwood Mgmt, Inc. v. Equal Emp. Opportunity Comm'n*, 2023 WL 4073826, at *14, --- F.4th --- (5th Cir. June 23, 2023) (citing *Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990)).  Of course, Morris Bart is not threatened with liability.

controversy have standing to sue under the Declaratory Judgment Act." *Id.* (citations omitted)(emphasis added). Indeed, "there must be a substantial controversy … between parties having adverse legal interests." *Id.* (citation omitted). As explained below, the Act's "case of actual controversy" requirement is coterminous with Article III's "case or controversy" requirement. Most commonly, standing and ripeness are the contested justiciability doctrines implicated by declaratory judgment remedies. So, too, here.

B. Relief Under the Declaratory Judgment Act Is Limited to Actual Cases Or Controversies; and Otherwise a Wholly Discretionary Remedy Unavailable to Morris Bart.

Because it is jurisdictional, the declaratory judgment plaintiff bears the burden of pleading or proving the threshold—the case or controversy—requirement. *Frye*, 953 F.3d at 294. Morris Bart fails to carry its burden because its request for declaratory relief alleges no concrete injury, would not resolve its substantive rights (it has none vis-à-vis MMA), and elicits wholly advisory opinions on fact-laden "client solicitation schemes," professional negligence, and the unauthorized practice of law divorced from the client-specific inquiries that require adjudication before relief may be entertained. Morris Bart's declaratory remedies should, therefore, be dismissed.

1. Step One: Justiciability. Morris Bart Fails to Plead a Justiciable Controversy. Morris Bart Lacks Standing to Seek Declaratory Relief Regarding MMA's Rights or Responsibilities Vis-à-Vis Hundreds of Non-Parties.

There is no actual controversy between Morris Bart and MMA.

In assessing the first step in determining whether to dismiss a declaratory judgment claim, it is sensible to take up standing before ripeness, though they overlap. *See Braidwood Mgmt, Inc. v. Equal Emp. Opportunity Comm'n*, 2023 WL 4073826, at *11, --- F.4th --- (5th Cir. June 23, 2023)("After standing comes ripeness. Unsurprisingly, there is a fair amount of overlap between Article III standing requirements and the ripeness analysis.").

Similar to how Louisiana limits the category of litigants statutorily empowered to maintain a lawsuit in state court to seek redress for an actor's unauthorized practice of law (i.e., limited to defined "aggrieved parties" and certain official prosecuting authorities),[6] the Article III standing-to-sue doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for an actual (or imminent) injury suffered by (or impending to) the plaintiff filing suit.  In the same way Morris Bart is not an "aggrieved party" under Louisiana law, nor is Morris Bart a litigant with standing to seek redress in federal court when it has no personal stake in the claim underlying the declaratory remedy requested.

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'"  *TransUnion LLC v. Ramirez*, --- U.S. ---, 141 S. Ct. 2190, 2203 (2021).  The plaintiff must have standing, a "personal stake" in the case.  *See id.*  "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."  *Id.* at 2205 (quotation omitted).

The familiar "irreducible constitutional minimum of standing consist of three elements."  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "[A] plaintiff must demonstrate standing for each claim [s]he seeks to press" and have "standing separately for each form of relief sought."  *Latitude Solutions, Inc. v. DeJoria*, 922 F.3d 690, 695 (5th Cir. 2019)(quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  All plaintiffs seeking relief in federal court must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560).  To establish injury in fact, the plaintiff must show that it suffered "an invasion of a legally

---

[6]     *See* R. Doc. 10; *see also infra* at IV.A.

protected interest" that is "concrete *and* particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (emphasis added, citation omitted); *see also Lujan*, 504 U.S. at 560 ("To have standing, a litigant must seek relief for an injury that affects him in a 'personal and individual way'"). "In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm. 'The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.'" *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)(citation omitted) (observing that individuals maintaining the lawsuit were intervenors whom the district court "had not ordered … to do or refrain from doing anything" and thus lacked standing).

"No concrete harm, no standing." *TransUnion LLC*, 141 S. Ct. at 2200, 2214. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including … reputational harm." *Id.* (citing *Spokeo, Inc.*, 578 U.S. at 340-41).

To put a finer point on this inquiry, when a party in federal court seeks a declaratory remedy, the Court is tasked with examining the underlying law giving rise to the declaratory remedy to determine whether the adverse legal interests required by Article III are created by the authority governing the asserted controversy between the parties. *HAVEN*, 915 F.2d at 170-71. The Fifth Circuit offers this guidance where a party seeks declaratory relief in federal court:

> Since it is the underlying cause of action of the [declaratory judgment] defendant against [the declaratory judgment] plaintiff that is actually litigated in the declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action.

*Id.* at 171. Morris Bart is not that proper party.

Here, Morris Bart seeks two declarations concerning contracts to which Morris Bart was not a party.  First, Morris Bart seeks a declaration that Attorney Employment Contracts between MMA and hundreds of former/putative clients are absolutely null because all such contracts were procured through the allegedly unauthorized practice of law or in violation of Louisiana professionalism rules, that is, "procured through the Apex scheme [or] the Velawcity scheme [or] entered into with clients where MMA did not disclose to those clients that MMA had agreed to split fees with another law firm or firms[.]"  R. Doc. at ¶¶ 70-76.  Second and redundantly, Morris Bart seeks a declaration that MMA is not entitled to attorneys' fees pursuant to any of MMA's Attorney Employment Contracts because "[w]here attorneys violate ethical rules, especially in a manner as egregiously as MMA did, disgorgement or denial of fees is an appropriate sanction." *Id.* at ¶¶ 77-91.  Morris Bart, suing in its capacity as a private law firm, seeks to preclude any effort by MMA to recover from clients (non-parties to this lawsuit) now represented by Morris Bart. However, Morris Bart fails to allege that MMA has, did, or will sue Morris Bart for the recovery of any attorneys' fees potentially owed by non-party clients to MMA. It simply complains that it must, in its capacity as attorney for some of these clients, "respond to" MMA's efforts to recover fees from some clients.

The law underlying the declaratory remedy Morris Bart purports to pursue in its own name (but for the benefit of hundreds of non-parties) is Louisiana contract law.  Where one party to a contract sues his contractual counterpart for breach of contract, for the purposes of assessing standing, "[t]his is a direct personal injury and a kind of harm required for standing under Article III."  *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012)(observing that "[i]njuries to rights recognized at common law—property, contracts, and torts—have always been sufficient for standing purposes" and that "[a] contract

claim under the Louisiana Civil Code is not derived from common law sources but is nevertheless essentially the same as a common law contract claim for the purpose of establishing standing in federal courts.").[7]

Morris Bart has no contract with MMA.[8]  Nor has Morris Bart "suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2206 ("[a]n uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law'").  Yet, Morris Bart has an attorney representing its private interests in this lawsuit in federal court, where none of the hundreds of clients who could be bound by or benefit from any ruling by this Court appear.  Morris Bart invokes Louisiana Civil Code article 2030's provision that "[a]bsolute nullity [of a contract] may be invoked by any person," but fails to indicate how this articulation of state law supplies Morris Bart with an injury-in-fact sufficient to satisfy Article III's standing requirements to proceed in federal court.  There is no case or controversy between Morris Bart and MMA.  Any case or controversy is between MMA and MMA's former clients (some, but presumably not all of whom are represented by Morris Bart).  *See HAVEN*, 915 F.2d at 170 ("a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action.").

---

[7]     There, plaintiff alleged that it suffered an injury in fact, $1.5 million in damages caused by defendant's alleged breach of contract.  Incidentally, that made the Fifth Circuit's inquiry into its subject matter jurisdiction an easy determination: one diverse party suing another in privity of contract for $1.5 million in damages.  Not so, here. Morris Bart does not seek monetary damages for itself because there are none.  There are none, nor could there be any, because Morris Bart has no stake whatsoever in the claims it brings against MMA.  It seeks only abstract declarations of attorney negligence or unauthorized practice of law.

[8]     Even if Morris Bart could conjure some cause of action MMA *could* file in an adversarial proceeding against Morris Bart, "an injury in law is not an injury in fact."  *See TransUnion*, 141 S. Ct. at 2206.

Without a judicially cognizable interest to vindicate, much less concrete *injury* of its own, Morris Bart vicariously attempts to invoke that of others and conjures nothing more than perhaps a representative interest in the Louisiana regulatory laws it asks this federal court to advise upon. Even where litigants have been permitted to assert the interests of others, the litigants themselves still "must have suffered an injury in fact, thus giving [them] a sufficiently concrete interest in the outcome of the issue in dispute." *Hollingsworth*, 570 U.S. at 707-08.  A practical interest in the outcome of any initiative by MMA to recover from its former clients attorneys' fees is not an injury or adverse legal interest capable of satisfying Article III's case or controversy requirement.

Inquiring into the additional constitutional prerequisite of ripeness simply amplifies the absence of any present or future case or controversy between Morris Bart and MMA.  *Cf. Braidwood Mgmt, Inc.*, 2023 WL 4073826, at *11.  The Fifth Circuit instructs:

> A court should dismiss a case for lack of "ripeness" when the case is abstract or hypothetical.  The key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." **A case is generally ripe if any remaining questions are purely legal ones**; conversely, a case is not ripe if further factual development is required.

*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895-96 (5th Cir. 2000)(citations omitted)(emphasis added).  To be sure, "the line between a declaratory judgment and an advisory opinion is fine[.]" *Braidwood Mgmt, Inc.*, 2023 WL 4073826, at *6 ("classifying this case requires us to run headlong into the ongoing battle over standing.").

Here, the declaratory plaintiff has no reasonable apprehension of litigation that would bring it into adversarial conflict with the declaratory defendant.  In this posture, any such declaration fails the ripeness test:  the case as between Morris Bart and MMA is abstract and hypothetical at best.  The "remaining questions" are hardly purely legal ones.  Morris Bart requests broad generalized pronouncements on MMA's alleged professional responsibility lapses and

unauthorized practice of law.  Make no mistake that underlying these abstract pronouncements are unadjudicated factual scenarios which Morris Bart itself admits are fact-specific to hundreds of its clients.  Morris Bart's proffered declarations require this Court to adjudicate the so-called Apex and Velawcity "client-solicitation schemes," find that MMA's conduct vis-à-vis Apex, Velawcity, other unnamed law firms with whom MMA allegedly shares fees, violates Louisiana's professional responsibility rules and/or constitutes the unauthorized practice of law, and once those predicates have been established, then to make individualized fact findings that each and every individual (out of "hundreds" of Morris Bart clients—non-parties to this suit) came to be an MMA client due to one of the heretofore mentioned but not yet established improper agreements with Velawcity, Apex, or other law firms.

Morris Bart presents no justiciable case or controversy in its lawsuit in its name against MMA.  The Court should dismiss the declaratory remedies for lack of jurisdiction.

    2.  Step Two:  Morris Bart Has Not and Cannot Show that the Court Has Authority to Grant Any Relief, Let Alone Declaratory Relief.

Ordinarily, federal courts reaching step two determine whether they have the authority to grant declaratory relief or if, instead, doing so would violate the Anti-Injunction Act due to the pendency of parallel state-court litigation.  No such federalism concern is present here.  However, if the Court reaches step two because it concludes that Morris Bart's declaratory remedy is justiciable, Morris Bart should nevertheless endeavor to support its threadbare amount-in-controversy theory and carry its burden to show that the Court has subject matter jurisdiction—that the Court has authority to entertain any of the claims.  If the Court exercises its subject matter jurisdiction and dismisses the substantive claims (as urged below), the Court still must determine whether it has jurisdiction over Morris Bart's declaratory judgment remedy.  *See Frye*, 953 F.3d

at 293 ("having dismissed Frye's [substantive] claim, we must reassure ourselves of our jurisdiction over Frye's claim under the Declaratory Judgment Act standing alone.").[9]

Neither of Morris Bart's requests for declaratory relief can supply an independent source of jurisdiction that is otherwise absent.  *California v. Texas*, 141 S. Ct. 2104, 2116 (2021); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014)(courts look to "the nature of the threatened action in the absence of the declaratory judgment suit" to determine whether jurisdiction exists).[10]   Looking through, the threatened action by MMA is a state law contract or quantum meruit suit or intervention to recover from its former clients any attorneys' fees owed for work performed.  The only possible predicate for subject matter jurisdiction would be diversity.  Assuming that the hundreds of clients whose interests Morris Bart purports to vicariously represent in this lawsuit are Louisiana residents, and assuming that MMA seeks to recover for work performed as to each one, Morris Bart would also have to show that the amount-in-controversy requirement for diversity jurisdiction is met.  It cannot do so without violating the non-aggregation principle.  *See generally Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911)("[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount."); *Snyder v. Harris*, 394 U.S. 332, 338  (1969)(rejecting the contention that amendments to Rule 23 eliminated the non-aggregation rule for class actions and reaffirming the rule that separate and distinct claims of two or more plaintiffs may not be aggregated to satisfy the

---

[9]      That is, if Morris Bart submits and the Court accepts that the amount-in-controversy requirement is met as to the two substantive claims, and then the Court dismisses those claims with prejudice as requested, then the Court would be required to "reassure [itself] of [its] jurisdiction over [Morris Bart's] claim under the Declaratory Judgment Act standing alone."  *See id.* (determining that claim for declaratory relief "satisfies the requirements for diversity jurisdiction even after [plaintiff's coercive] claim has been dismissed.").

[10]     Because "it is the underlying cause of action … that is actually litigated in a declaratory judgment action[,]" *HAVEN*, 915 F.2d at 171, when a plaintiff's underlying cause of action fails as a matter of law, its claim for declaratory relief necessarily fails as well.  *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217-18 (5th Cir. 2015)("When the other claims have been dismissed, it is appropriate also to dismiss any declaratory judgment request.").

jurisdictional amount).  It follows that Morris Bart cannot circumvent that rule by improperly proceeding as a singular vicarious uninjured plaintiff and assume that the Court may just tally hundreds of potential attorney's fees claims (which it cannot do without running afoul of the non-aggregation principle).  Nor does Morris Bart allege or suggest that any one of the hundreds of clients could owe MMA (or that MMA will or has sought) $75,000.01.  The Court lacks authority to grant Morris Bart relief.

      3.   Step Three: The Court Should Decline to Exercise Jurisdiction Over Morris Bart's Declaratory Judgment Act "Claims."

If the Court reaches step three, it should decline to exercise jurisdiction over Morris Bart's Declaratory Judgment Act "claims" for three independent reasons.

First, even if Morris Bart has Article III constitutional standing (which is denied), it lacks prudential standing.  Whether framed as a defect of prudential standing or a violation of Rule 17, both are failures of prudential standing, which the Court would only reach if it determined that it had subject matter jurisdiction.[11]

Second, for the reasons set forth more fully below, Morris Bart fails to state any cause of action on which relief may be granted.  Once the Court dismisses with prejudice Morris Bart's substantive causes of action, if the Court determines that it has subject matter jurisdiction over the remaining declaratory remedy (and that that remedy is justiciable), the Court should nevertheless decline to exercise its jurisdiction to make generalized fact findings and advisory declarations

---

[11]     Where a plaintiff asserts claims on another party's behalf, prudential limitations on standing bar the suit. *See McMahon v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020)(citation omitted).  Morris Bart brings this lawsuit in its own name but for the benefit of hundreds if not thousands of non-parties.  Similarly, pursuing its declaratory remedy in its own name without joining the hundreds of clients for whose benefit the declaratory relief is sought, Morris Bart has violated Rule 17(a) of the Federal Rules of Civil Procedure.  Morris Bart has no reasonable basis to proceed in its own name in seeking the declaratory relief it sought.  In any event, MMA simply raises this issue in the alternative to its constitutional standing challenge and would oppose substitution of hundreds of individuals as plaintiffs in this lawsuit given that the Court would lack subject matter jurisdiction for the reasons briefed supra at pp.16-17.

regarding hundreds of non-parties whom themselves could not sue in federal court for the same relief sought vicariously by their attorney in its private capacity.

Third and relatedly, resolving Morris Bart's declaratory judgment "claims" on behalf of and for the potential benefit of hundreds of non-parties to this lawsuit would not further the interests of judicial economy that Morris Bart seems to suggest would inure to its clients' collective benefit.  The Court would be embroiled in adjudicating the several fact-laden client-solicitation "schemes" and alleged unauthorized law practice and professional responsibility lapses as merely the evidentiary backdrop for finding facts with respect to each of hundreds of non-parties, which may or may not participate in this lawsuit, or even be bound by any ruling by this Court.  In other words, the Court's efforts to resolve this litigation in Morris Bart's name for the ostensible benefit of only unknown number of Morris Bart's clients, when other more inclusive and/or directed litigation is pending in other courts among proper parties with standing, and whom would be bound by judgments issued therein, may be in vain.  The Court should decline to indulge the unusual consequences of Morris Bart's unauthorized litigation tactic under the (false) pretext of efficiency. *Cf. TransUnion*, 141 S. Ct. at 2207 (observing that "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution."); *cf. Hollingsworth*, 570 U.S. at 704 ("we must put aside the natural urge to proceed directly to the merits of [an] important dispute and to 'settle' it for the sake of convenience and efficiency."); *cf. TOTAL Gas & Power N. Am., Inc. v. Federal Energy Regulatory Comm'n*, 859 F.3d 325, 340 (5th Cir. 2017)(Jolly, J., concurring)(observing that there is "no authority for the proposition that subjecting a party to an arguably inefficient though *ultra-vires* proceeding may constitute an injury sufficient to give rise to an Article III case or controversy.").

19

**IV.    Morris Bart Has Failed to State Plausible Claims for Unauthorized Practice of Law and Intentional Interference with Business Relations.**

In its Complaint, predicating its requests for injunctive relief, Morris Bart attempts to allege two substantive Louisiana-law claims: (A) MMA's alleged unauthorized practice of law; and (B) MMA's alleged interference with MMA's former clients, hundreds of which are now allegedly Morris Bart's clients.  Each is doomed as a matter of law and should be dismissed with prejudice.

**A.    Morris Bart's frivolous unauthorized practice of law claim is itself unauthorized by the state legislature: Morris Bart is not an "aggrieved party." La.R.S. § 37:213.1B(2).**

Morris Bart's unauthorized practice of law claim fails as a matter of law because La.R.S. § 37:213.1(B)(2) expressly precludes "law firms" from seeking injunctive relief or damages for another actor's alleged unauthorized practice of law.  In advancing this claim, Morris Bart must have misread the statute.  That Morris Bart failed to move to dismiss with prejudice this frivolous claim after being alerted to its fatal defectiveness[12] is at least concerning and at most vexatious.

Morris Bart alleges that it is an "aggrieved party" and therefore may seek attorney's fees and to enjoin MMA from engaging in the unauthorized practice law.[13]  Morris Bart is wrong. The statute could not be clearer on this point: "**The term 'aggrieved party' shall not include an attorney or a law firm.**"  La.R.S. § 37:213.1B(2) (emphasis added).  Morris Bart—a law firm— is statutorily precluded from prosecuting unauthorized practice of law claims.

---

[12]    *See* R. Doc. 10.

[13]    *See* R. Doc. 1 at ¶ 69, where Morris Bart alleges:

Pursuant to Louisiana Revised Statutes § 37:213.1(D)(1), which provides that any aggrieved person may petition to enjoin an actor to engage in the unauthorized practice of law, Morris Bart seeks an injunction prohibiting MMA from continuing to engage in the unauthorized practice of law[.] Morris Bart also seeks costs and attorneys' fees incurred in bringing this injunction, as permitted by the statute.

Insofar as Morris Bart's damages disclaimers are credible, Morris Bart twice cites an erroneous subpart of La.R.S. § 37:213.1.[14]  It appears that Morris Bart intended to invoke La.R.S. § 37:213.1(C), which provides:

> An aggrieved party, the attorney general of the state of Louisiana, the Louisiana State Bar Association, or any district attorney may file a petition to enjoin an actor from engaging in the unauthorized practice of law.  If an actor is enjoined from engaging in the unauthorized practice of law as provided in this Section, the court may also award costs and attorney fees to the petitioner.[15]

Regardless, Morris Bart wholly ignores the preceding subsection's clear text, which expressly excludes "attorney[s]" and "law firm[s]" from the class of "aggrieved parties" which may pursue relief under Louisiana law for the unauthorized practice of law.  The state legislature itself determined that law firms sustain neither "damage [n]or harm" from another's unauthorized practice of law; La.R.S. § 37:213.1B(2) is fatal to Morris Bart's unauthorized practice of law claim.

In defining "aggrieved party," the state legislature explicitly excludes "attorneys" and "law firms" like Morris Bart.  *See* La.R.S. § 37:213.1B(2).  This text explicitly renders the singular law firm plaintiff, Morris Bart,[16] ineligible to pursue injunctive relief, damages, or attorney fees due to MMA's alleged unauthorize practice of law.  Because the Louisiana legislature expressly carved out law firms from the statute's definition of "aggrieved party," Morris Bart's request for any relief, let alone drastic injunctive and advisory declaratory relief, is frivolous.  The claim should be dismissed with prejudice at plaintiff's cost.

---

[14]     In its Complaint (R. Doc. 1) and Motion (R. Doc. 3-1 at pp. 11-12), Morris Bart invokes La.R.S. § 37:213.1(D)(1). But, there is no subpart (1) of subsection (D); *and* (D) itself provides for <u>monetary</u> damages, which Morris Bart expressly disclaims (*see, e.g.*, R. Doc. 1 at pp. 21-22 (limiting its prayer for relief to injunctive relief, declaratory relief, and "attorney's fees, costs, and interest"); R. Doc. 3-1 at p. 12 ("Morris Bart does not seek monetary damages at all[.]")).

[15]     Notably, Morris Bart's request to recover attorney's fees was based on this statutory provision, which it is patently ineligible to prosecute.  There being no recoverable attorney's fees at stake in this litigation makes Morris Bart's unspoken amount-in-controversy theory even more untenable.

[16]     *See* R. Doc. 1 at ¶ 52 (alleging that "Plaintiff Morris Bart is a Louisiana law firm[.]").

B.  At best, Morris Bart alleges a cause of action for attempted or negligent interference with business relations. No such claim exists under Louisiana law.

Putting aside the conclusory allegations and focusing on the factual content as *Iqbal/Twombly* instruct, Morris Bart alleges that MMA negligently and sloppily continued to contact some of MMA's former (and Morris Bart's current) clients in an "attempt[] to divert" those clients from Morris Bart "because MMA has a financial interest" in "collecting some portion of a fee from these clients' recoveries."  R. Doc. 1 at ¶¶ 56, 57, 63.  Absent from the Complaint are any factual allegations supporting the label "malice" or any allegations of fact indicating that MMA actually diverted clients from Morris Bart.  Either independently is fatal to Morris Bart's attempt to state a claim.  Morris Bart's allegations of MMA negligence and "attempts" do not and cannot state a claim for intentional interference with business relations because Louisiana does not recognize attempted or negligent interference with business relations.  Because Morris Bart fails to state a claim upon which relief may be granted, the claim should be dismissed with prejudice.

Louisiana courts view "with disfavor" intentional interference with business relations claims. *Boudreaux v. OS Rest. Servs., L.L.C.*, No. CIV.A. 14-1169, 2015 WL 349558, at *4 (E.D. La. Jan. 23, 2015) (Africk, J.) (quoting *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.,* 812 So.2d 834, 841 (La.App. 4 Cir.2002)).  Such claims are notoriously "difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings." *Whitney Bank v. SMI Companies Global, Inc.*, 949 F.3d 196, 208 (5th Cir. 2020)(citation omitted). So stringent are the elements that courts repeatedly intone that "there appear to be no reported cases where a party has been held liable for this tort."  *Id.* (citation omitted).

As the Fifth Circuit has observed, the intentional interference elements erect a nearly insurmountable bar to recovery:

22

> To succeed on a tortious interference with business relations claim in Louisiana, a plaintiff must prove by a preponderance of the evidence that defendants improperly influenced others not to deal with the plaintiff and were motivated by actual malice in so doing.  It is not enough to allege that a defendant's actions affected the plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party.  After plaintiff passes this threshold, he must also establish that the interference was improper, i.e., not to 'protect legitimate interests.  Finally, a plaintiff must prove that the defendant was motivated by spite or ill will to satisfy the malice element.

*Whitney Bank v. SMI Companies Global, Inc.*, 949 F.3d 196, 207 (5th Cir. 2020)(internal citations, quotations omitted).  Setting forth each element distinctly, the plaintiff must prove that the defendant: "(1) acted with actual malice; (2) actually prevented the plaintiff from dealing with a third party; (3) acted improperly, i.e., not to protect legitimate interests; and (4) caused damage to the plaintiff." *IberiaBank v. Broussard*, 9907 F.3d 826, 841 (5th Cir. 2018)(citation and quotations omitted)(articulating four elements of the tort).   Morris Bart fails to allege facts supporting *any* element.

A party alleging merely negligent acts will not state a cause of action.  *Whitney Bank*, 949 F.3d at 208-09 (citation omitted).  And allegations that a defendant was driven by profit or financial incentives likewise fall short of stating the malice element.  *Id.*  Even collection letters sent by a defendant to a plaintiff's customers in which the defendant attempted to collect from customers *who owed it nothing*, without more, fall woefully short of satisfying the stringent malice element. *Id.* ("Whitney's attempts to collect the amounts due after SMI failed to repay the loan, however clumsy, were pursuant to its legitimate business interest.").  Simply put, "Louisiana does not recognize a cause of action for negligent interference with contract or business relations."  *Id.* at 209 (citation omitted).

What these authorities illustrate, for pleading purposes, is that a plaintiff must allege facts indicating that the defendant "actually prevented the plaintiff from dealing with a third party" to

satisfy the actual interference element, and that "the defendant was motivated by spite or ill will" to satisfy the malice element. *See id.* Morris Bart fails to allege facts that satisfy these standards. To the contrary, Morris Bart alleges facts at most indicative of negligence. Critically absent from Morris Bart's complaint are (i) any factual allegations that, if proved, would indicate malice or ill will on the part of MMA; (ii) any factual allegations indicating actual interference (i.e., that MMA has succeeded in lulling clients away from Morris Bart or otherwise "actually prevent[ing] Morris Bart from dealing with clients).

Morris Bart attempts to allege that MMA intentionally interfered with Morris Bart's business relations by "continu[ing] to contact its former clients now represented by Morris Bart even after receipt of letters" sent to MMA informing MMA that the client has hired Morris Bart to pursue the client's hurricane claims. *See* R. Doc. 1, ¶¶ 53-55. Morris Bart offers a few anecdotes of "confusing correspondences [MMA] sent to clients" and of MMA's alleged "attempt[s] to divert clients from seeking representation by Morris Bart." Id. at ¶¶ 55-57. In conclusory fashion, Morris Bart characterizes MMA's conduct as "being done with actual malice because MMA is aware that Louisiana law prohibits attorneys from contacting represented parties" and "also being done in attempt (sic) to improperly influence MMA's former clients not to deal with Morris Bart, because MMA has a financial interest" in such alleged "attempted" interference. *See id*. at ¶¶ 62-63. There are no allegations that MMA's alleged correspondence directed to Morris Bart's clients has actually prevented Morris Bart from dealing with its clients, much less suffered any damage.[17]

---

[17]       Morris Bart's interference allegations are a far cry from allegations this Court deemed sufficient to survive a Rule 12(b)(6) challenge. See *Boudreaux v. OS Rest. Servs., L.L.C.*, No. CIV.A. 14-1169, 2015 WL 349558, at *4 (E.D. La. Jan. 23, 2015)(Africk, J.)(plaintiff stated plausible claim in alleging "that [defendants] knew the noncompetition agreement was invalid, and that their efforts were damaging plaintiff's livelihood[.]"). Far from actual malice or actual successful interference resulting in harm, Morris Bart tellingly seeks no damages (because it has not and cannot allege damage or concrete harm); it alleges only that it has "reallocate[d]" time to addressing MMA's "confusing correspondences." R. Doc. 1 at ¶ 57. It fails to state a claim. See *D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Development, LLC*, No. 20-1051, 2021 WL 917335, at *3-4 (E.D. La. Mar. 10, 2021)(Fallon, J)(absent factual allegations indicating that party was "actually prevented" from dealing with third party and absent factual allegations

Morris Bart does not and cannot allege any facts to satisfy the "malice" and "actual interference" elements of an intentional interference with business claims and thus fails to state a claim upon which relief may be granted.  Any request for leave to amend should be denied as futile.

### CONCLUSION

When one law firm files a federal lawsuit seeking injunctive and declaratory relief against another law firm—not to vindicate a right of the plaintiff law firm—but to declare and enjoin the latter's alleged professional responsibility lapses, it exacerbates a "mess" no one authorized it to clean up.  Even a law firm filing suit on behalf of another law firm against still another law firm, invoking federal jurisdiction, must show that it presents a federally justiciable case or controversy and that the Court has subject matter jurisdiction over each of its claims.  Morris Bart wholly fails to do so.  And, neither state-law substantive claim is plausible.  In fact, the Louisiana legislature explicitly forbids Morris Bart from pursuing the "unauthorized practice of law" claim it asserts, and which permeates its request for declaratory relief, begging the question why *this* lawsuit was brought.  Finally, Morris Bart concedes in its own defective allegations that it cannot allege *facts* that, if proved, would establish that MMA intentionally (with malice) interfered with (succeeded in diverting clients form Morris Bart or otherwise caused any monetary or other harm to) Morris Bart's business.  Its case should be dismissed.

---

indicating malice, rather than profit-motivation, no intentional interference claim could be stated).

Respectfully submitted,

*/s/ Gwyneth O'Neill*
Gwyneth A. O'Neill, 35944
William P. Gibbens, 27225
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
(504) 680-6065
billy@semmlaw.com
gwyneth@semmlaw.com

*Attorneys for McClenny, Moseley & Associates, PLLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2023, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system, which will send a notice of this electronic filing to all counsel

of record.

*/s/ Gwyneth O'Neill*
Gwyneth O'Neill