# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MORRIS BART, L.L.C. | Case No. 23-cv-1453 |
| Plaintiff, | |
| | District Judge Lance M. Africk |
| v. | |
| MCCLENNY MOSELEY & ASSOCIATES, PLLC, | Magistrate Judge Michael B. North |
| Defendant. | |

## <u>MEMORANDUM IN OPPOSITION TO MMA'S 12(b) MOTION TO DISMISS</u>

Plaintiff, Morris Bart, L.L.C., respectfully submits this Memorandum in Opposition to the Rule 12(b) Motion to Dismiss filed by Defendant, MMA (f/k/a McClenny, Moseley & Associates, PLLC) (the "Motion"). For the reasons discussed more fully below, MMA's Motion should be denied. First, Morris Bart, L.L.C. has standing to assert its declaratory judgment claims, and this Court has subject matter jurisdiction to review them. Second, Morris Bart states a plausible claim against MMA for intentional interference with business relations—as this Court has already determined. Because MMA presents no proper grounds under either Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(6), its Motion should be denied.

## BACKGROUND

Defendant MMA is a Texas-based law firm. Compl., R. Doc. 1, at ¶ 2. In the wake of two Atlantic hurricane seasons that devastated much of South Louisiana, MMA saw opportunity for profit. *Id.* at ¶¶ 7-9. So MMA devised a massive advertising and solicitation scheme, utilizing roof repair companies and a legal advertising firm as case runners and solicitors for the ultimate purpose of collecting thousands of Louisiana property owners who MMA then purported to represent to pursue hurricane damage claims against insurers. *See id.* at ¶ 10.

1

MMA's schemes began to unravel in late 2022, when the United States District Court for the Western District of Louisiana was deluged with 1,600 last-minute filings by MMA on behalf of plaintiffs asserting damage from 2020's Hurricane Laura.  *Id.* at ¶¶ 40-46.  Those filings included claims asserted against the wrong insurance company, claims on behalf of clients who had expressly discharged MMA, and claims that had already been compromised on behalf of MMA's "clients" by other attorneys.  *Id.* at ¶¶ 42, 44.

This District was confronted with MMA's schemes in early 2023, as claims arising out of Hurricane Ida began to make their way through the court system.  *Id.* at ¶ 47.  Magistrate Judge North held multiple hearings to take evidence relating to MMA's conduct and found that MMA had utilized a roofing company, Apex Roofing and Restoration, LLC ("Apex") to procure clients through a promise that Apex perform roof repair work in exchange for an assignment of insurance proceeds.  *Id.* at ¶¶ 47-48.  Apex would then, unbeknownst to the property owner, execute an Attorney Employment Contract with MMA "on behalf of" the property owner ("Attorney Employment Contract"), which MMA would then rely upon to submit a letter of representation and notice of loss on behalf of the property owner, and then negotiate with the insurance company, without the property owner's knowledge.  *Id.* at ¶¶ 16-17.

In addition to this Apex scheme, MMA also procured clients through a legal advertising firm, Tort Network, LLC d/b/a Velawcity.  *Id.* at ¶ 26-33.  Velawcity utilized internet advertising and direct-mail solicitation to direct potential clients to a call center, operated by Velawcity for the purpose of vetting clients to send to MMA.  *Id.* at ¶¶ 28, 30.  MMA paid Velawcity on a per-client basis.  *Id.* at ¶ 33.

As these schemes unraveled, Louisiana courts and enforcement agencies took action.  In March of 2023, MMA was suspended from practicing in the Western District.  *Id.* at ¶ 49.  Nearly

simultaneously, the Louisiana Office of Disciplinary Counsel suspended MMA's only remaining Louisiana attorney from the practice of law. *Id.* As a result, the thousands of clients MMA procured through its illegal schemes required new representation. *Id.* at ¶ 51. Thousands of those clients have turned to Morris Bart, a Louisiana law firm with decades of experience representing property owners against insurers. *Id.* at ¶¶ 52-53.

Morris Bart's suit against MMA arises from controversies relating to Morris Bart's representation of these former MMA clients ("Morris Bart-MMA Clients"). First, because MMA has not disclaimed (and in some cases has indicated an affirmative intent to seek) its statutory attorneys' fee interest in any recoveries obtained by its former clients, Morris Bart seeks a declaration on two separate bases that MMA is not entitled to any fee from any recovery obtained by Morris Bart on behalf of Morris Bart-MMA Clients. *Id.* at ¶¶ 70-91. It is Morris Bart (and not any of Morris Bart's clients, as MMA suggests) that has an interest in obtaining this declaration, because any fee to which MMA might theoretically be entitled to would be taken from a single contingency fee paid by the client, allocated between Morris Bart and MMA.

Separately, Morris Bart seeks injunctive relief barring MMA from intentionally interfering with its business relations. As set forth in Morris Bart's Complaint, MMA has, on multiple occasions, continued to contact its former clients, even after being informed that it was discharged in favor of Morris Bart. *Id.* at ¶ 55. MMA's contacts with its former clients include communications encouraging those clients to sign up as clients of law firms other than Morris Bart and "urgent" requests to the client to complete settlement paperwork for settlements negotiated by MMA without the clients' knowledge. *See id.* This conduct so clearly evidences an intent to interfere with Morris Bart's business relations that, at the behest of this Court, MMA entered into a Consent Order agreeing to cease all such contact with its former clients. R. Docs. 12, 13.

In a desperate attempt to manufacture issues worthy of this Court's attention in its Rule 12(b) Motion to Dismiss, MMA distorts the posture of relief that Morris Bart seeks in its Complaint and downplays its egregious, intentional conduct to improperly interfere with Morris Bart-MMA Clients' current cases with Morris Bart. These misrepresentations should be ignored and dismissed.

## I. Legal standard for Rule 12(b)(1) and Rule 12(b)(6) motions.

In its Motion, MMA raises both Rule 12(b)(1) and Rule 12(b)(6) arguments as grounds to dismiss this matter. A Rule 12(b)(1) motion challenges the court's jurisdiction to hear and decide the case, and the burden of proof lies with the party seeking to invoke the court's jurisdiction. FED. R. CIV. P. 12(b)(1); *Chauvin v. Symetra Life Ins. Co.*, 422 F. Supp. 3d 1145, 1150 (E.D. La. 2019) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). A motion to dismiss for lack of subject matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. In ruling on a motion to dismiss under 12(b)(1), the court may rely on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* Because an attack brought under 12(b)(1) "concerns the court's very power to hear the case . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 180-81 (5th Cir. 1992) (citation and internal quotations omitted); *see also Ramming*, 281 F.3d at 161 ("In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute").

On the other hand, a Rule 12(b)(6) motion challenges the plaintiff's complaint on the grounds that it fails to state a legally cognizable claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "Such a motion is rarely granted because it is viewed with disfavor." *AKM Acquisitions, LLC v. Am. Nat'l Red Cross*, No. 14-535, 2014 WL 2719555, at *2 (E.D. La. June 16, 2014). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, the court construes well-pleaded facts, *accepted as true*, in the light most favorable to the plaintiff. *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (citation omitted). A claim is facially plausible if the plaintiff alleges facts that allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A 12(b)(6) motion should be denied when the plaintiff's allegations provide any possible theory of relief. *Ramming*, 281 F.3d at 162.

## II.  Morris Bart has standing to assert its declaratory judgment claims, and this Court has subject matter jurisdiction to review them.

Morris Bart seeks a declaratory judgment that MMA's Attorney Employment Contracts with Morris Bart-MMA Clients are absolute nullities and, therefore, that MMA is not entitled to any fee from any recovery obtained by Morris Bart on behalf of Morris Bart-MMA Clients. Morris Bart has the power to seek such relief under the Declaratory Judgment Act, which provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. As MMA properly points out:

> When considering a declaratory judgment action, a district court must engage in a three-step inquiry. The court must ask (1) whether an actual controversy exists between the parties in the case; (2) whether it has authority to grant declaratory

relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action.

*Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293-94 (5th Cir. 2019) (internal quotations and citations omitted). MMA fails, however, to properly analyze these inquiries.

### a. There is a justiciable controversy between Morris Bart and MMA.

To determine whether "an actual controversy exists between the parties in the case," courts apply Article III requirements for a case or controversy. *Id.* at 294. This requires that the plaintiff seeking declaratory relief have standing, *BroadStar Wind Sys. Grp. Ltd. Liab. Co. v. Stephens*, 459 F. App'x 351, 356, and show that the dispute at issue is "definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character," *Frye*, 953 F.3d at 294. Morris Bart satisfies these requirements.

As a threshold matter, Morris Bart has standing to bring a suit questioning the validity of these contracts because Louisiana law empowers "any person" to invoke the absolute nullity of a contract. LA. CIV. CODE art. 2030. Here, Morris Bart alleges that MMA's Attorney Employment Contracts are absolute nullities pursuant to the Louisiana Civil Code because they "violate[] a rule of public order, as when the object of a contract is illicit or immoral." *Id.* Because this article expressly provides that "absolute nullity may be invoked by any person," Morris Bart has standing to challenge MMA's rights under these absolutely null contracts. *See Gaspard v. Offshore Carne & Equip.*, No. 94-261, 1998 WL 388597, at *4 (E.D. La. July 8, 1998) ("If LOIA [the Louisiana Oilfield Indemnity Act] creates only a relative nullity . . . Seacor, as an unrelated third party, would have no standing to complain. On the other hand, if LOIA creates an absolute nullity, then . . . Seacor has standing to challenge the legality of Nabors's decision to honor the 'absoutely null' agreement.").

Further, it is Morris Bart (and not any of the Morris Bart-MMA Clients, as MMA suggests) that has an interest in obtaining this declaratory judgment, because any fee to which MMA might theoretically be entitled to would be taken from a single contingency fee paid by the client, and then allocated between Morris Bart and MMA. Despite this clear fact, MMA argues that Morris Bart does not have any injury-in-fact because Morris Bart does not have a "personal stake" in the "two declarations [it seeks] concerning contracts to which Morris Bart was not a party" and that, therefore, "there is no case or controversy between Morris Bart and MMA." MMA's Rule 12(b) Motion to Dismiss, R. Doc. 16, at pp. 11-14. MMA misses the point.

The "case or controversy" between MMA and Morris Bart is whether MMA is entitled, pursuant to the contracts that Morris Bart alleges are absolute nullities, to a portion of any attorneys' fees recovered by Morris Bart. Under Louisiana law, where a client engages one lawyer pursuant to a contingency fee contract and then discharges them in favor of a different lawyer who is also engaged on a contingency basis, "only one contingency fee" is paid by the client, which is "in turn allocated between or among the various attorneys . . . on the basis of factors which are set forth in the Code of Professional Responsibility." *Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 118 (La. 1978). Morris Bart's "personal stake" is thus the threatened injury to it because of MMA's potential entitlement to a share of the contingency fee paid by the Morris Bart-MMA Clients. The questions whether MMA's Attorney Employment Contracts are null and/or whether MMA is entitled to a fee based on its violations of professional rules therefore bear directly on threatened injury to Morris Bart, not the Morris Bart-MMA Clients.

Further, seizing upon its ability to recover fees related to its former clients—which it expressly does not renounce—MMA argues that "Morris Bart has no reasonable apprehension of

litigation that would bring it into adversarial conflict with the declaratory defendant." MMA's Rule 12(b) Motion to Dismiss, R. Doc. 16, at p. 15. But MMA fails to understand:

> Although declaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts ..., declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Frye*, 953 F.3d at 294 (internal quotations and citations omitted); *see also id.* ("[T]hreats of litigation can constitute evidence of a justiciable controversy even if they are 'indirect or implicit or covert.'" (quoting *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 750 (5th Cir. 2009))); *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937) (finding that a dispute is definite and concrete when parties previously took adverse positions with respect to their existing obligations); *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) ("The purpose of the Declaratory Judgment Act is to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued. The declaratory judgment vehicle also is intended to provide a means of settling an actual controversy before in ripens into a violation of the civil . . . law.").

The impact of MMA's egregious behavior on Morris Bart's ability to effectively represent Morris Bart-MMA Clients belies MMA's assertions that Morris Bart presents no justiciable case or controversy against MMA. As Morris Bart has attempted to pursue the claims of its Morris Bart-MMA Clients, it has encountered continuous difficulties—and actual controversies—caused by MMA's conduct. For example, some Morris Bart-MMA Clients wish to negotiate settlement checks issued by their insurer that list MMA as a payee along with the client.[1] When Morris Bart

---

[1] *See* Ex. 1, Declaration of Austin Marks (Aug. 1, 2023), at ¶ 6.

attorneys, on behalf of their Morris Bart-MMA Clients, have requested that these checks be issued without MMA as a payee, insurers have been unwilling to agree, citing "MMA's statutory right to a portion of those settlement funds."[2]  And even after Magistrate Judge North encouraged these insurers to reissue such checks upon an offer from Morris Bart to indemnify the insurer against any fee claim, in light of the reality that "the potential for claims against attorneys' fees" is a "battle that is going to be waged between new plaintiffs' counsel and former plaintiffs' counsel and no one else,"[3] these insurance companies continue to refuse to reissue the checks without listing MMA as a payee.[4]  Indeed, based on this ongoing controversy, the Louisiana Department of Insurance has noted that "insurers are refusing to communicate with policyholders solely because they have received a letter of representation from MMA," and the Commissioner has been required to issue a directive that any letter of representation from MMA is invalid because MMA is "absolutely prohibited from practicing law in the state of  Louisiana."[5]  MMA's behavior clearly continues to directly impact Morris Bart and its ability to effectively represent its Morris-Bart MMA Clients.

Moreover, to avoid the application of this clear case law, MMA completely omits the particularly relevant fact that it is *already* involved in litigation with Morris Bart relating to its entitlement to fees under these Attorney Employment Contracts.  MMA has moved to intervene to claim a fee interest in at least three suits pending in the Western District of Louisiana in which

---

[2] Ex. 2, June 23, 2023 e-mail from counsel for Evanston Insurance Company ("We understand Ms. Hadley's frustrations with MMA having still not negotiated the check or distributed the funds to her, but given MMA's statutory right to a portion of those settlement funds, Evanston cannot reissue the settlement funds without MMA as a payee."); *see also* Ex. 1, Declaration of Austin Marks (Aug. 1, 2023), at ¶ 8.

[3] Ex. 3, June 14, 2023 Status Conference Tr. at pp. 19-20.

[4] Ex. 4, June 16, 2023 e-mail from counsel for Progressive Insurance Company (indicating that "While I will discuss Judge North's recommendations with my client, Progressive is not subject to federal jurisdiction as it is domiciled in Louisiana."); Ex. 2, June 23, 2023 e-mail from counsel for Evanston Insurance Company.

[5] Ex. 5, July 20, 2023 Directive 221 from the Louisiana Department of Insurance.

Morris Bart has substituted as counsel for a Morris Bart-MMA Client.[6]  And even as recently as June 27, 2023, MMA has further submitted affidavits seeking reimbursement for their costs in these matters, such as for court costs, service fees and property inspections.[7]  Resolving the issue of whether MMA is entitled, pursuant to MMA's Attorney Employment Contracts that Morris Bart alleges are absolute nullities, to a portion of attorneys' fees recovered by Morris Bart undoubtedly qualifies as an issue that has and continues to impact and threaten Morris Bart.

It is clear: Morris Bart faces an actual controversy related to MMA's conduct because (i) insurers continue to refuse to issue settlement checks without listing MMA as a payee to, or even communicate with, Morris Bart-MMA Clients; and (ii) MMA continues to claim, or threaten to claim, attorneys' fees under these absolutely null contracts. These actions directly impact Morris Bart and its ability to effectively represent its Morris Bart-MMA clients.

### b. This Court has the authority to grant the declaratory relief Morris Bart seeks.

MMA argues that even if an actual case or controversy exists, this Court does not have diversity jurisdiction.  MMA's argument not only distorts the allegations in Morris Bart's Complaint, but it also disregards and misapplies relevant case law concerning this issue.

Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different States.  28 U.S.C. § 1332(a).  While the party seeking to invoke subject matter jurisdiction has the burden of proving that the amount in controversy exists, "[t]ypically, a plaintiff's assertion as to the amount in controversy is sufficient to invoke

---

[6] Ex. 6, Motion & Petition for Intervention, *Jones-Bell v. Imperial Fire & Cas. Ins. Co.* (No. 2:22-cv-03855); Ex. 7, Motion & Petition for Intervention, *Theriot v. State Farm Fire & Cas. Co., et al.* (No. 2:22-cv-04083); Ex. 8, Motion & Petition for Intervention, *Semmes v. Liberty Mut. Fire Ins. Co., et al.* (No. 2:22-cv-03494).

[7] *See* Ex. 9, Zachary Mosely Declaration, *Jones-Bell v. Imperial Fire & Cas. Ins. Co.* (No. 2:22-cv-03855) (under seal); Ex. 10, Zachary Mosely Declaration, *Theriot v. State Farm Fire & Cas. Co., et al.* (No. 2:22-cv-04083) (under seal); Ex. 11, Zachary Mosely Declaration, *Semmes v. Liberty Mut. Fire Ins. Co., et al.* (No. 2:22-cv-03494) (under seal).

diversity jurisdiction." *Thomas v. Family Sec. Ins. Co.*, No. 2:22-cv-05025, 2022 WL 17978833, at *2 (W.D. La. Dec. 28, 2022); *see also Chauvin*, 422 F. Supp. 3d at 1151 ("In general, a plaintiff's good faith assertion that the amount in controversy exceeds $75,000 sufficiently invokes diversity jurisdiction"). "If the amount in controversy is not apparent, [courts] may then rely on 'summary judgment' type evidence." *Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). In a suit seeking declaratory relief, the amount in controversy is "measured by the value of the object of the litigation . . .[,] the value of the right to be protected[,] or the extent of the injury to be prevented." *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (citations omitted).

Here, Morris Bart adequately pleads that the amount in controversy exceeds $75,000 and the complaint and underlying facts support this conclusion. MMA's assertions otherwise should be ignored for two straightforward reasons: (i) diversity jurisdiction exists as to Morris Bart's claims against MMA, and (ii) the rule against non-aggregation is not applicable in this context.

First, MMA makes the illogical argument that diversity jurisdiction would only exist if (1) each <u>client</u> of Morris Bart is diverse to MMA[8] and (2) MMA seeks to recover for work performed as to each. This is a misunderstanding, at best, of the posture of the relief Morris Bart seeks, which is based on MMA's attempt to claim a portion of fees to which *Morris Bart* is entitled, not an attempt to assert injuries on behalf of Morris Bart's clients. As it relates to determining whether there is complete diversity between the parties of this action, Morris Bart and MMA are the only relevant parties that this Court must consider when determining whether diversity of citizenship exists, and, as MMA has already conceded (and seemingly previously understood): "It

---

[8] In fact, MMA goes further than just asserting that Morris Bart's clients must have diverse citizenship. MMA implies that the clients would have to be Louisiana residents in order to satisfy the diversity of citizenship requirements. Clearly, this is wrong. Even assuming the false premise that Morris Bart's clients are relevant to this inquiry, those clients' citizenship could be any state besides Texas—not only Louisiana—in order to satisfy diversity requirements.

is undisputed that the complete diversity-of-citizenship requirement is met between the Louisiana law firm plaintiff and the Texas law firm defendant." *See* MMA's Memorandum in Opposition to Morris Bart, LLC's Motion for Temporary Restraining Order and Preliminary Injunction, R. Doc. 10, at p. 4.[9] Further, the amount in controversy related to Morris Bart's claim, *i.e.* its request for declaratory relief, is the value of the fees MMA could recover directly from fees that will be awarded to Morris Bart, not the individual client. Again, MMA has been prohibited from practicing law in Louisiana, barred from contacting Morris Bart's clients, and the only avenue for MMA to obtain any purported fees is from Morris Bart following the payment of contingency fees. Diversity of citizenship exists between Morris Bart and MMA, and the amount in controversy is the total amount of potential fees that MMA may ultimately seek to collect from Morris Bart.[10]

Second, because of MMA's improper attempt to tether theoretical claims related to Morris Bart's <u>clients</u> to the amount in controversy between MMA and Morris Bart, MMA wholly misapplies the non-aggregation principle to <u>Morris Bart's</u> claims. The rule against aggregation applies only in cases in which multiple plaintiffs seek to combine separate and distinct claims against a single defendant, or to cases brought by a single plaintiff against multiple defendants who are not jointly liable. *See, e.g.*, *Thomson v. Gaskill*, 315 U.S. 442, 446-47 (1942); *Aetna Cas. & Sur. Co. v. Graves*, 381 F. Supp. 1159, 1163 (W.D. La. 1974); 14AA CHARLES ALAN WRIGHT

---

[9] As a reminder, this is not the first time MMA has feebly attempted to argue that this Court does not have jurisdiction to hear this case. MMA made its first attempt at a jurisdictional challenge on May 12, 2023, *see id.*, but then withdrew its objection on May 22, 2023, *see* Proposed Consent Order, R. Doc. 12-1, at p. 1.

[10] And here again, the question—which MMA has notably not affirmatively answered—as to whether MMA will seek to recover for work performed on each Attorney Employment Contract is not the only controversy that exists. Insurance companies continue to refuse to reissue settlement checks to Morris Bart's clients without listing MMA as a payee. *See supra*, notes 2 & 4; Morris Bart has approximately forty Morris Bart-MMA Clients that have requested Morris Bart's assistance with having insurers reissue their settlement checks, which MMA failed to negotiate and distribute to the client. *See* Ex. 1, Declaration of Austin Marks (August 1, 2023), at ¶ 6. Morris Bart's interest in attorney's fees in these approximately forty cases exceeds $75,000. *Id.* at ¶ 10. Therefore, even if MMA were to directly disclaim its ability of seeking recovery for work performed, which it has not done, diversity of citizenship would still exist and the amount in controversy would still be satisfied based on the fact that insurers refuse to issue settlement checks to Morris Bart-MMA Clients without listing MMA as a payee.

& ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3704, at 566-95 (4th ed.) (collecting cases).

The non-aggregation rule does not apply here, however, because multiple plaintiffs are not uniting for separate and distinct demands. Instead, one plaintiff, Morris Bart, is asserting that a unitary controversy exists as related to multiple contracts with one defendant; specifically, that under multiple contracts, MMA will seek a total of more than $75,000 from Morris Bart. Courts have found that the rule against anti-aggregation is inapplicable to cases in which a single plaintiff makes a unitary claim against a defendant based on multiple different contracts with the same defendant. *See, e.g.*, *Auto-Owners Ins. Co. v. Stevens & Ricci*, 835 F.3d 388, 398-99 (3d Cir. 2016) (holding that the anti-aggregation rule did not apply to an insurer's declaratory relief action over insurance coverage of class action because, from the insurer's perspective, there was only one claim, by its insured, for defense and indemnity costs, even though the "unitary controversy between these parties reflects the sum of many smaller controversies" and even though the underlying class action suit was brought on behalf of multiple claimants); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006) (finding that the anti-aggregation rule does not apply "to a federal declaratory-judgment action between a single plaintiff and a single defendant, just because the unitary controversy between these parties reflects the sum of many smaller controversies." (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347-48 (1977)); *Equitable Life Assur. Soc. of the United States v. Wert*, 102 F.2d 10, 13 (8th Cir. 1939) (finding that it was proper to aggregate the value of thirteen separate insurance policies between the plaintiff and the defendant to meet the jurisdictional amount); *see also Hartford Fire Ins. Co. v. Flagstaff Indus., Corp.*, No. 1:11-cv-1137, 2011 WL 4436583, at *6 (N.D. Ohio Sept. 22, 2011) ("A single plaintiff (Hartford) may aggregate all its claims against a single defendant (Flagstaff)

in calculating the amount in controversy even if the controversy between these parties reflects the sum of many smaller controversies (the judgments awarded to the class action claimants against Flagstaff in the underlying action)").

As properly understood, the amount in controversy here is the total amount of potential fees that MMA may ultimately seek to collect from Morris Bart. The cases MMA relies on are inapposite in that they involve multiple plaintiffs attempting to aggregate multiple claims. *See* MMA's Rule 12(b) Motion to Dismiss, R. Doc. 16, at p. 17 (citing *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911); *Snyder v. Harris*, 394 U.S. 332, 338 (1969)). Morris Bart is not asserting separate and distinct demands; instead, Morris Bart is asserting a unitary controversy related to MMA's potential ability to recover attorneys' fees from Morris Bart for work related to Morris Bart-MMA Clients based on all of the Attorney Employment Contracts that are uniformly absolute nullities.

*First State Bank v. Chicago, R.I. & P.R. Co.*, 63 F.2d 585 (8th Cir. 1933), provides a helpful guide for the unique situation presented here. There, a railroad company sought to enjoin the defendant from bringing separate suits against the company for forty-eight alleged forged bills of lading. In finding that the jurisdictional amount had been met, the court noted that although none of the bills of lading individually met the jurisdictional amount, aggregation of each bill of lading was proper because "[t]he action is to cancel, not one of the bills of lading, but all of them." *Id.* at 588. Therefore, the "necessary result of the litigation, were plaintiff successful, would be to cancel a claimed indebtedness" in excess of the jurisdictional amount. *Id.*

Similarly, in *Meridian*, 441 F.3d 536 (7th Cir. 2006), the Seventh Circuit considered whether the amount in controversy was satisfied in a declaratory judgment action brought by an insurer, Meridian, seeking a declaration that it had no duty to defend or indemnify an insured

against a pending state court class action alleging violations of the Telephone Consumer Protection Act. The state court class action sought damages for unsolicited advertising faxes sent by Meridian's insured to a class of more than 50 recipients. *Id.* at 537. Reversing the decision of the district court, the United States Court of Appeals for the Seventh Circuit held that the jurisdictional amount in controversy was satisfied in the federal declaratory judgment action because, in part, the anti-aggregation rule did not apply. *Id.* at 539. The court found that Meridian's declaratory action was, in effect, a single claim by the insurer, Meridian, against a single defendant, its insured. In rejecting the application of the anti-aggregation rule in this context, the court provided:

> Appellees offer additional arguments in defense of their judgment, as they are entitled to do. One is that, because none of the class members would be entitled to recover more than $1,500, the rule against aggregating multiple litigants' claims to reach the jurisdictional floor . . . prevents a federal court from exercising jurisdiction. Yet Meridian has not aggregated multiple parties' claims. From its perspective there is only one claim—by its insured, for the sum of defense and indemnity costs. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347–48, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), holds that the anti-aggregation rule does not apply to a federal declaratory judgment action between a single plaintiff and a single defendant, just because the unitary controversy between these parties reflects the sum of many smaller controversies. No more need be said on this subject.

*Id.*

The same reasoning underpinning *First State Bank* and *Meridian* applies equally here to make those cases persuasive authority for this Court to consider. Morris Bart, an individual plaintiff, is asking this Court to declare that MMA, an individual defendant, is not entitled to any portion of attorneys fees' pursuant to several different underlying contracts. As in *First State Bank*, aggregation of these underlying contracts is proper because Morris Bart is not seeking a declaration that merely one of MMA's Attorney Employment Contracts is absolutely null; instead, Morris Bart seeks a declaration that all of the contracts are uniformly null. And just like in *First State Bank*, the necessary result of this litigation, if Morris Bart is successful, is to prevent MMA

from seeking attorneys' fees from Morris Bart under <u>all</u> of these absolutely null contracts. Similarly, as in *Meridian*, Morris Bart is not aggregating multiple claims. Instead, from its perspective there is only one potential claim: whether MMA is entitled to attorneys' fees pursuant to any Attorney Employment Contract. Accordingly, Morris Bart is asserting a unitary controversy against MMA. It is not, as MMA asserts, asserting multiple controversies on behalf of each Morris Bart-MMA Client related to each individual Attorney Employment Contract.

Because the non-aggregation principle is inapplicable here, Morris Bart can properly use the sum of MMA's potential entitlement to recovery to meet the amount in controversy requirements. This amount would undoubtedly be in excess of the jurisdictional amount. At the time it filed its Complaint, Morris Bart represented more than 900 Morris Bart-MMA Clients who had an MMA Attorney Employment Contract.[11] By merely taking into account the potential fees MMA could collect for just *three* exemplary Morris Bart-MMA Client's claims, the potential amount of recovery well exceeds the $75,000 threshold. Under the Attorney Employment Contracts, if not declared absolutely null and unrecoverable, MMA would potentially have a right to 33% of the total gross sum collected plus reasonable expenses after a lawsuit is filed.[12] A 33% interest in just three exemplary cases, with damage estimates of $125,949.07,[13] $99,504.90,[14] and 49,376.43[15] respectively, puts the amount in controversy at approximately $90,000.[16] Indeed,

---

[11] *See* Declaration of Austin Marks (May 1, 2023), R. Doc. 3-8, at ¶ 5. Currently, Morris Bart represents over 1,200 Morris Bart-MMA Clients. Ex. 1, Declaration of Austin Marks (Aug. 1, 2023), at ¶ 5.
[12] *See, e.g.*, Ex. 12, Falgout and MMA Attorney Employment Contract; Ex. 13, Audibert and MMA Attorney Employment Contract; Ex. 14, E. Johnson and MMA Attorney Employment Contract.
[13] *See* Ex. 15, Falgout Estimate, at p. 13.
[14] *See* Ex. 16, Audibert Estimate, at pp. 8-9.
[15] *See* Ex. 17, E. Johnson Estimate, at p. 4.
[16] *See also, e.g.*, Ex. 18, Martin Estimate, at p. 7 (estimating damages of $39,937.98); Ex. 19, L. Simmons Estimate, at pp. 5-6 (estimating damages of $45,446.31); Ex. 20, H. Patterson Estimate, at p. 6 (estimating damages of $64,484.06).

MMA has already sought costs of approximately $4,500,[17] $5,430.03,[18] and $6,996.34[19] in three other cases in the Western District of Louisiana. Moreover, assuming that MMA sought just $85 for its work for the approximately 900 Morris Bart-MMA Clients that existed at the time Morris Bart filed its Complaint, MMA would still be able to claim more than $75,000 from Morris Bart. The obvious likelihood, however, is that the majority of Morris Bart-MMA clients sustained thousands of dollars' worth of damages, raising the amount in controversy of any fees MMA may seek from Morris Bart well in excess of the jurisdictional amount.

MMA misunderstands both Morris Bart's underlying claim and the relevant principles of non-aggregation. Its argument that the Court lacks authority to grant Morris Bart relief should therefore be ignored.

### c. MMA offers no compelling reason for this Court to decline to exercise its jurisdiction because one does not exist.

While this Court's conclusion that Morris Bart's Complaint presents a justiciable controversy does not require this Court to entertain the action, the facts surrounding the present dispute related to MMA's egregious actions militate in favor of this Court exercising its discretion to do so. *See Rowan Cos., Inc.*, 876 F.2d at 28 ("It is well established that a district court 'is not required to provide declaratory judgment relief, and it is a matter for the district court's sound discretion whether to decide a declaratory judgment action.'") (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942))). The Fifth Circuit uses the following nonexclusive factors, referred to as the

---

[17] *See* Ex. 9, Zachary Mosely Declaration, *Jones-Bell v. Imperial Fire & Cas. Ins. Co.* (No. 2:22-cv-03855) (under seal).

[18] *See* Ex. 10, Zachary Mosely Declaration, *Theriot v. State Farm Fire & Cas. Co., et al.* (No. 2:22-cv-04083) (under seal).

[19] *See* Ex. 11, Zachary Mosely Declaration, *Semmes v. Liberty Mut. Fire Ins. Co., et al.* (No. 2:22-cv-03494) (under seal).

*Trejo* factors, to guide a district court's exercise of discretion to accept or decline jurisdiction in a federal declaratory action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedents in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994). At bottom, these factors address: "the proper allocation of decision making between state and federal courts," "fairness," and "efficiency." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390-91 (5th Cir. 2003).

MMA notably leaves any reference of these factors out of its Motion to Dismiss—likely because they clearly disfavor this Court declining to exercise its jurisdiction. There is no pending action that will resolve all matters at dispute here (*i.e.* a declaration as to the nullity of MMA's Attorney Employment Contracts and MMA's rights to collect attorneys' fees thereunder). Morris Bart filed this suit based on an actual controversy because MMA can seek fees pursuant to the Attorney Employment Contracts. Morris Bart did not engage in forum shopping in bringing this suit and it is not using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds. *See id.* at 398 ("Declaratory judgment actions often involve the *permissible* selection of a federal forum over an available state forum, based on the anticipation

that a state court suit will be filed (emphasis added)).  The Eastern District of Louisiana is a convenient forum for the parties and witnesses, which MMA has demonstrated by previously seeking clients located in the Eastern District.  Retaining the lawsuit would promote judicial economy.  And finally, Morris Bart is not requesting that the district court construe a state judicial decree involving the same parties.

Further, MMA's "three independent reasons" for this Court to decline jurisdiction similarly fail.  First, Morris Bart is not asserting claims on another party's behalf; instead, Morris Bart seeks a declaration as to its *own* interest in the Morris Bart-MMA Client's contingency fees.[20] Because Morris Bart is not asserting the rights of others and it is indeed the real party in interest in this dispute, MMA's invocation of prudential standing and Federal Rule of Civil Procedure 17 is a red herring that should be ignored.[21]

Second, for the reasons discussed more fully below, Morris Bart does state a claim upon which relief can be granted.[22]  But regardless, once again, MMA's distortion of the procedural posture of Morris Bart's request for declaratory relief should be ignored.  Morris Bart does not ask this Court to make advisory declarations regarding non-parties, it seeks a declaration from this Court as to MMA's rights vis-à-vis Morris Bart.  To answer Morris Bart's requests for declaratory relief, this Court will not have to make generalized fact findings as to "hundreds of non-parties." Instead, it would only have to decide whether the Attorney Employment Contracts utilized with each Morris Bart-MMA Client and procured through a fraudulent scheme of third-party runners and solicitors is absolutely null, and whether, because of this absolute nullity, MMA, a law firm

---

[20] *See supra*, Part (II), Section (a).

[21] *See BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 450 (N.D. Tex. 2015) (noting that "one . . . prudential standing requirement is the fundamental restriction on federal judicial authority that a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties," and that "this prudential standing requirement is encompassed in Rule 17(a) of the Federal Rules of Civil Procedure." (citations and alterations in original omitted)).

[22] *See infra*, Part (III).

currently prohibited from practicing law in Louisiana, should be uniformly barred from seeking recovery of any portion of attorneys' fees recovered by Morris Bart pursuant to its work for Morris Bart-MMA Clients. MMA's request for declaratory relief simply would not require this Court to make any advisory declarations and generalized fact findings relating to the numerous Morris Bart-MMA Clients.

And finally, judicial economy *will* be furthered by this Court's exercise of jurisdiction over Morris Bart's request for declaratory judgment relief. A declaration that MMA has no entitlement to seek a fee out of the recovery of any Morris Bart-MMA Client will avoid piecemeal litigation as to MMA's quantum meruit entitlement to a portion of Morris Bart's fee. *See Sherwin-Williams Co.*, 343 F.3d at 391 (in analyzing efficiency concerns to determine whether a court should exercise its discretion to accept or decline jurisdiction in a federal declaratory action, "[a] federal district court should avoid duplicative or piecemeal litigation where possible"). Further, this Court is well familiar with the instant dispute and the MMA Attorney Employment Contracts at issue, and this Court therefore offers the most expedient forum to resolve the issue. *See Bridgefield Cas. Ins. Co. v. River Oaks Mgmt.*, No. 14-1665, 2015 WL 137248 (E.D. La. Jan. 9, 2015) ("It is in the interests of judicial efficiency to allow the Plaintiff to maintain this [declaratory] action in this Court, as it is already familiar with the terms of the insurance policy."); *Mass. Bay Ins. Co. v. Usie*, No. 17-01600, 2018 WL 1834368 (W.D. La. Mar. 26, 2018) ("[M]aintaining the declaratory judgment action will provide the most expedient resolution regarding the coverage issue.").

Based on the foregoing reasons, this Court should exercise its discretion to accept jurisdiction in this federal declaratory action.

### III. Morris Bart states a plausible claim against MMA for intentional interference with business relations—as this Court has already determined.[23]

Despite MMA's assertions otherwise, Morris Bart's complaint contains sufficient, well-pleaded factual matter that is plausible on its face to allow this Court to draw the reasonable inference that MMA is liable for the *intentional* interference with Morris Bart's business relations. *See Iqbal*, 556 U.S. at 678. While Morris Bart agrees that the bar to succeed on such a claim is high, the facts Morris Bart alleges as to MMA's unprecedented, egregious misconduct easily show that (1) MMA acted with actual malice; (2) MMA actually prevented Morris Bart from dealing with a third party; (3) MMA acted improperly; and (4) MMA caused damage to Morris Bart. *See IberiaBank v. Broussard*, 907 F.3d 826, 841 (5th Cir. 2018) (setting forth the elements to succeed on a claim for tortious interference with business relations in Louisiana).

First, Morris Bart sufficiently alleges actual malice by stating that: "This interference is being done with actual malice, because MMA is aware that Louisiana law prohibits attorneys from contacting represented parties." Compl., R. Doc. 1, at ¶ 62; *see Boudreaux v. OS Rest. Servs., LLC*, No. 14-1169, 2015 WL 349558 (E.D. La. Jan. 23, 2015) ("Plaintiff has alleged that defendants acted maliciously . . . plaintiff's allegations that they knew the noncompetition agreement was invalid, and that their efforts were damaging plaintiff's livelihood, are sufficient to state a plausible claim that defendants' motivations were malicious, rather than legitimate."). Second, as MMA readily admits, this Court has already ordered it to "cease client communications" with Morris Bart-MMA Clients. *See* MMA's Rule 12(b) Motion to Dismiss, R. Doc. 16, at p. 3. In other words, this Court has *already found* that MMA is intentionally interfering

---

[23] Although Morris Bart concedes that it lacks standing to assert an independent claim for the unauthorized practice of law against MMA, as set forth in this Opposition, Morris Bart does have the right and standing to assert a declaratory judgment action seeking a declaration that the contracts confected with Morris Bart-MMA Clients are absolute nullities based on MMA's unauthorized practice of law. Therefore, Morris Bart is entitled to a declaratory judgment that MMA is not entitled to any fees for Morris Bart-MMA Client claims.

with Morris Bart's business relations by virtue of its order directing MMA to cease doing so. And as Morris Bart sufficiently alleges: "MMA has . . . attempted to divert clients from seeking representation by Morris Bart." Compl., R. Doc. 1, at ¶ 56. Third, Morris Bart sufficiently alleges MMA's interference was improper: "MMA's interference is also being done in attempt to improperly influence MMA's former clients not to deal with Morris Bart, because MMA has a financial interest in these clients retaining other law firms who may not agree to (or at least not object to) MMA collecting some portion of a fee from these clients' recoveries." *Id.* at ¶ 63. And fourth, Morris Bart sufficiently alleges damage by indicating that, "Morris Bart attorneys have been required to reallocate time and resources that would ordinarily be spent on representing their clients' interests to stop MMA from making these overtures in violation of Louisiana professionalism rules." *Id.* at ¶ 57.

Based on these well pleaded facts, Morris Bart has plausibly stated a claim against MMA for intentional interference with business relations.

## CONCLUSION

For the foregoing reasons, Morris Bart respectfully asks that this Court deny MMA's Rule 12(b) Motion to Dismiss. Morris Bart, L.L.C. has standing to assert its declaratory judgment claims, and this Court has subject matter jurisdiction to review them. Further, Morris Bart states a plausible claim against MMA for intentional interference with business relations. Therefore, MMA presents no proper grounds under either Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(6) to dismiss this matter, and MMA's Motion should be denied.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

Kerry J. Miller (La. Bar No. 24562), T.A.
Rebekka C. Veith (La. Bar No. 36062)
Carly E. Jonakin (La. Bar No. 40412)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
Email: kmiller@fishmanhaygood.com
Email: rveith@fishmanhaygood.com
Email: cjonakin@fishmanhaygood.com

*Counsel for Morris Bart, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading was filed via CM/ECF

on August 1, 2023, which sent electronic notice to all counsel of record.

s/ *Kerry J. Miller*