UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MORRIS BART, L.L.C.<br><br>Plaintiff,<br><br>v.<br><br>MCCLENNY MOSELEY & ASSOCIATES, PLLC,<br><br>Defendant. | Case No. 23-cv-1453<br><br>District Judge Lance M. Africk<br><br>Magistrate Judge Michael B. North |

**MEMORANDUM IN SUPPORT OF MORRIS BART, L.L.C.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, Morris Bart, L.L.C., respectfully submits the following memorandum in support of its Motion for Summary Judgment on Causes of Action Nos. 3 and 4 set forth in its Complaint for Declaratory and Injunctive Relief. R. Doc. 1.  As set forth more fully below, Morris Bart is entitled to a declaratory judgment as a matter of law that MMA's Attorney Employment Contracts with clients who are now represented by Morris Bart that were procured through either Apex Roofing and Restoration Company, LLC ("Apex") or Tort Network, LLC (d/b/a "Velawcity") are absolute nullities.

**FACTUAL BACKGROUND**

*MMA's misconduct*

This Court is by now familiar with the "unprecedented tableau of misconduct" perpetrated by Defendant MMA (f/k/a McClenny Moseley & Associates, PLLC) in this District and throughout Louisiana following Hurricanes Laura, Delta, Zeta, and Ida.[1]  MMA, a Texas-based

---

[1] Order & Reasons, R. Doc. 76, *Franatovich v. Allied Tr. Ins. Co.*, No. 2:22-cv-2552 (E.D. La. Mar. 16, 2023).

law firm, waged a "brazen, multifaceted" solicitation campaign ultimately resulting in MMA "engaging" thousands of Louisiana residents as clients for storm damage claims.[2]

All told, MMA purported to represent thousands of Louisiana residents in their claims for damage caused by Hurricanes Laura, Delta, Zeta, and Ida.[3] As MMA began to file lawsuits on behalf of those clients, first in the United States District Court for the Western District of Louisiana and later in this District, serious issues relating to MMA's professional conduct came to light. In the Western District, United States District Judge Cain discovered that the more-than 1,600 Hurricane Laura suits MMA filed on behalf of Louisiana plaintiffs included many duplicate lawsuits, lawsuits on behalf of plaintiffs who had attempted to dismiss MMA as their attorney, and lawsuits filed on behalf of plaintiffs whose claims had already been dismissed or compromised.[4] In this District, United States Magistrate Judge North found that "established fact[s]" showed that MMA had invoked appraisal and filed lawsuits on behalf of people "they knew they did not represent," filed suits against the wrong insurance company, and failed to disclose known conflicts to clients.[5] Most relevant here, Judge North also uncovered two schemes MMA implemented to acquire hurricane clients: the Apex scheme and the Velawcity scheme.

MMA's Apex scheme was perpetrated as follows: pursuant to a contractual arrangement with MMA, Apex, an Alabama roofing company, would approach homeowners with storm-damaged roofs and offer to make repairs to those roofs in exchange for the homeowner granting

---

[2] *Id.*
[3] *See* Order & Reasons at p. 24, R. Doc. 76, *Franatovich v. Allied Tr. Ins. Co.*, No. 2:22-cv-2552 (E.D. La. Mar. 16, 2023) (finding that, related to Hurricane Ida claims, MMA had represented to an insurance carrier that it represented a homeowner when, in fact, it represented Apex in 856 separate cases); Order at pp. 2, 37, R. Doc. 6, *Wallace v. Shelter Mut. Ins. Co.*, No. 1:21-CV-02258 (W.D. La. Oct. 21, 2022) (staying all of MMA's pending litigation related to damages from Hurricanes Laura and Delta, which totaled 1,642 cases); Declaration of Austin Marks, R. Doc. 17-1, at ¶ 5 (Aug. 1, 2023) ("Morris Bart now represents approximately 1,217 clients who were formerly represented by MMA in their hurricane claims").
[4] Ex. 1, Oct. 10, 2022 McClenny Moseley Motion Hearing Tr. at 15:16-16:5; Ex. 2, Mar. 4, 2023 Memorandum Order at pp. 1-2.
[5] Order & Reasons at p. 2, R. Doc. 76, *Franatovich v. Allied Tr. Ins. Co.*, No. 2:22-cv-2552 (E.D. La. Mar. 16, 2023).

Apex permission to make a claim on the homeowner's insurance policy.[6] If an agreement was reached, Apex would obtain from the homeowner an Assignment of Benefits for "any and all rights" under their insurance policies relating to the roofing work Apex would perform.[7] Then, an Apex representative would execute a contingency fee contract with MMA "on behalf of" the property owner, which MMA would then use to negotiate with the insurer and file lawsuits on behalf of the homeowner, typically without knowledge or consent from the homeowner.[8] The Louisiana Department of Insurance's Commissioner of Insurance has determined that MMA, through this Apex scheme, "knowingly intended . . . to keep [] Louisiana consumers and Louisiana insurers unaware of MMA's surreptitious plan to divert insurance claim proceeds to their benefit."[9]

MMA's scheme with Velawcity worked this way: MMA entered into multiple contracts with Velawcity pursuant to which MMA paid Velawcity to conduct "pre-screening intake review[s]" of potential clients who responded to internet or direct-mail advertisements for MMA's services.[10] Velawcity operated a call center, which MMA representatives have admitted was where any person who "reach[ed] out to MMA asking for a contract" would "get directed."[11] After speaking with potential clients on behalf of MMA, Velawcity representatives would send the potential client a contract to DocuSign, and, if a signature was obtained, Velawcity would then forward the contract to MMA.[12] Put simply, Velawcity generated client leads for MMA.[13] And

---

[6] Ex. 3, Cease and Desist Order and Notice of Fine, at ¶ 4(a), Louisiana Dep't of Ins. (May 1, 2023); Ex. 4, Hearing Tr. at 21:4-23:12, *Falgout v. Allstate Indemn. Co.*, No. 22-cv-5215 (E.D. La. Apr. 12, 2023).
[7] *Id.*; Ex. 5, Apex Roofing & Restoration Assignment of Benefits at p. 1, R. Doc. 14-1, *Falgout v. Allstate Indemn. Co.*, No. 22-cv-5215 (E.D. La. Apr. 4, 2023) ("Apex Assignment of Benefits").
[8] Ex. 4, Hearing Tr. at 23:20-26:11; 32:8-15, *Falgout v. Allstate Indemn. Co.*, No. 22-cv-5215 (E.D. La. Apr. 12, 2023); Ex. 5, Apex Assignment of Benefits, at p. 5 (referenced in hearing transcript).
[9] Ex. 3, Cease and Desist Order and Notice of Fine, at ¶ 13, Louisiana Dep't of Ins. (May 1, 2023).
[10] Ex. 6, Velawcity contracts *in globo*.
[11] Ex. 7, Dec. 13, 2022 McClenny Moseley Motion Hearing Tr. at pp. 101-02.
[12] *Id.* at p. 102. Velawcity was also involved in the intake process for MMA clients procured through the Apex scheme. *See* Ex. 15, Aug. 3, 2022 Velawcity Intake Survey of Charles Falgout.
[13] Order & Reasons at p. 21, R. Doc. 76, *Franatovich v. Allied Tr. Ins. Co.*, No. 2:22-cv-2552 (E.D. La. Mar. 16, 2023).

3

for this work, Velawcity was paid on a per client basis, either $3,000 or $3,500 for each signed contingency fee contract it delivered.[14]

***Morris Bart and MMA***

As MMA's misconduct and schemes came to light, its operations in Louisiana crumbled. MMA was suspended from practicing law in the Western District of Louisiana in March of 2023. MMA's only remaining Louisiana attorney (who has since disaffiliated from the law firm) was suspended from the practice of law in Louisiana the same month. In both this District and the Western District, MMA was ordered to cease communications with all former clients on whose behalf MMA had filed a lawsuit.

One result of this was that the thousands of clients MMA procured through its Apex and Velawcity schemes were now left without representation. Many thus sought new representation, including 1,217 claimants who turned to Morris Bart, a Louisiana law firm with over forty years of experience representing plaintiffs in property damage claims against insurers (the "Morris Bart-MMA Clients").[15] Morris Bart, since March of 2023, has worked diligently to familiarize itself with the circumstances pursuant to which MMA came to represent and purported to pursue the claims of Morris Bart-MMA Clients, and through this work has discovered certain patterns of conduct by MMA.[16]

For example, Michael Beitzel's property located at 7129 Meadowbrook Drive, Mandeville, Louisiana was damaged on or about August 29, 2021 from Hurricane Ida. On or before March 11, 2022, Mr. Beitzel was approached by Apex representatives, and Apex obtained from Mr. Beitzel

---

[14] Ex. 6, Velawcity contracts *in globo*.
[15] *See* Declaration of Austin Marks, R. Doc. 17-1, at ¶¶ 4-5 (Aug. 1, 2023).
[16] Morris Bart provides the following examples of individual Morris Bart-MMA Clients to illustrate MMA's common scheme of misconduct that invariably impacts Morris Bart's ability to effectively represent all Morris Bart-MMA Clients. These examples are not, as MMA may allege, to inject individual issues into this dispute, which is squarely between, and only between, Morris Bart and MMA.

4

an Assignment of Benefits for "any and all rights" under their insurance policies relating to the roofing work Apex would perform.[17] Nine days later, representatives from Apex, on behalf of Mr. Beitzel, signed a retention agreement with MMA.[18] On March 31, 2022, Velawcity obtained a survey intake form from Michael Beitzel.[19] On April 1, 2022, MMA then issued a letter of representation to Mr. Beitzel's insurer stating its client was Mr. Beitzel and requiring that any payment on Mr. Beitzel's claims also list MMA as a payee on any payment "from this point forward."[20] Subsequent to MMA being prohibited from practicing law in Louisiana, Mr. Beitzel retained Morris Bart, LLC as new counsel of record and terminated MMA.[21]

The same scheme was used for the claim of Charles Falgout for his property located at 143 Frances Street, Slidell, Louisiana, which was a consistent pattern and practice utilized by MMA for the Morris Bart-MMA clients. Mr. Falgout was approached and executed an Assignment of Benefits form with Apex on August 3, 2022.[22] On August 10, 2022, Apex representatives executed a retention agreement with MMA on behalf of Mr. Falgout.[23] Velawcity documented an intake survey for Mr. Falgout on the same date.[24] On August 12, 2022, MMA sent Mr. Falgout's insurer a letter of representation and first notice of loss.[25] Like Mr. Beitzel, subsequent to MMA being prohibited from practicing law in Louisiana, Mr. Falgout retained Morris Bart, LLC as new counsel of record and terminated MMA on March 22, 2023.[26] In addition to clients like Mr. Beitzel and

---

[17] Ex. 8, Mar. 11, 2022 Assignment of Benefits between Apex and Michael and Holly Beitzel.
[18] Ex. 9, Mar. 20, 2022 Retention Agreement between MMA and Trish Drummond of Apex on behalf of Michael Beitzel.
[19] Ex. 10, Mar. 31, 2022 Velawcity Intake Survey of Michael Beitzel.
[20] Ex. 11, Apr. 1, 2022 Letter of Representation and First Notice of Loss from MMA to UPC Insurance regarding Michael Beitzel.
[21] Ex. 12, Discharge Letter from Morris Bart and signed by Michael Beitzel.
[22] Ex. 13, Aug. 3, 2022 Assignment of Benefits between Apex and Charles Falgout.
[23] Ex. 14, Aug. 10, 2022 Retention Agreement between MMA and Trish Drummond of Apex on behalf of Charles Falgout.
[24] Ex. 15, Aug. 3, 2022 Velawcity Intake Survey of Charles Falgout.
[25] Ex. 16, Aug. 12, 2022 Letter of Representation from MMA regarding Charles Falgout.
[26] Ex. 17, Discharge Letter from Morris Bart and signed by Charles Falgout.

Mr. Falgout procured through the Apex scheme, Morris Bart has also been engaged by hundreds of clients procured through MMA's Velawcity scheme.[27]

Unfortunately, as Morris Bart has attempted to pursue the claims of its Morris Bart-MMA Clients, like Mr. Beitzel and Mr. Falgout, it has encountered difficulties caused by MMA's conduct. For example, some Morris Bart-MMA Clients wish to negotiate settlement checks issued by their insurer that list MMA as a payee along with the client. When Morris Bart attorneys, on behalf of their Morris Bart-MMA Clients, have requested that these checks be issued without MMA as a payee, insurers have been reluctant to agree, citing "MMA's statutory right to a portion of those settlement funds."[28] And even after Magistrate Judge North in this District encouraged these insurers to reissue such checks upon an offer from Morris Bart to indemnify the insurer against any fee claim, in light of the reality that "the potential for claims against attorneys' fees" is a "battle that is going to be waged between new plaintiffs' counsel and former plaintiffs' counsel and no one else,"[29] these insurance companies continue to refuse to reissue the checks without listing MMA as a payee.[30]

These battles are indeed being waged. As another example, based on information provided to the Louisiana Department of Insurance that "insurers are refusing to communicate with policyholders solely because they have received a letter of representation from MMA," the Commissioner has been required to issue a directive that any letter of representation from MMA is invalid because MMA is "absolutely prohibited from practicing law in the state of Louisiana."[31]

---

[27] *See, e.g.*, Ex. 18, Sept. 21, 2022 Velawcity Intake Survey of Corey Lewis; Ex. 19, June 13, 2023 Discharge Letter from Morris Bart signed by Corey Lewis.
[28] Ex. 20, June 23, 2023 e-mail from counsel for Evanston Insurance Company.
[29] Ex. 21, June 14, 2023 Status Conference Tr. at pp. 20-21, *In re Hurricane Ida Claims* (E.D. La. June 14, 2023).
[30] Ex. 22, June 16, 2023 e-mail from counsel for Progressive Insurance Company; Ex. 20, June 23, 2023 e-mail from counsel for Evanston Insurance Company; *see also* Declaration of Austin Marks, R. Doc. 17-1, at ¶¶ 7-9 (Aug. 1, 2023).
[31] Ex. 23, July 20, 2023 Directive 221 from the Louisiana Department of Insurance.

Nonetheless, MMA has moved to intervene to claim a fee interest in at least three suits pending in the Western District of Louisiana in which Morris Bart has substituted as counsel for a Morris Bart-MMA Client.[32]  While MMA has not officially intervened in cases in this District, the mere prospect of MMA intervening and asserting a claim or lien related to its entitlement to attorneys' fees for Morris Bart-MMA Clients remains a live issue and an impediment to the administration of justice in this District, as demonstrated by insurers continuing to refuse to communicate with Morris Bart-MMA Clients or issue settlement checks without listing MMA.[33]

And unfortunately, the MMA saga and the damage it has inflicted on Louisiana citizens, including those in this district, appears far from over.  Last week, United States District Judge Cain in the Western District identified another potential scheme perpetrated by MMA—theft by way of endorsing over millions of dollars in insurance settlement checks without providing any proceeds to clients.[34]  Notwithstanding this latest scheme exposed by Judge Cain, Zachary Moseley and other former MMA attorneys are seeking reinstatement of their privileges to practice law in Louisiana courts;[35] a bold and remorseless move no doubt, and one consistent with MMA's recent motion to dismiss filed in this matter in which it reneged on an earlier representation to this court not to contest subject matter jurisdiction based on amount in controversy.  Providing relief by nullifying the contracts MMA entered unlawfully with respect to Morris Bart-MMA Clients is not only legally warranted based on the law and facts but is also needed to completely end MMA's involvement in the lives of Louisiana citizens.

---

[32] Ex. 24, Motion & Petition for Intervention, *Jones-Bell v. Imperial Fire & Cas. Ins. Co.* (No. 2:22-cv-03855); Ex. 25, Motion & Petition for Intervention, *Semmes v. Liberty Mut. Fire Ins. Co., et al.* (No. 2:22-cv-03494); Ex. 26, Motion & Petition for Intervention, *Theriot v. State Farm Fire & Cas. Co., et al.* (No. 2:22-cv-04083).
[33] *See supra*, notes 28, 30.
[34] *See* Ex. 27, Order, R. Doc. 34, *In re McClenny Moseley & Assocs PLLC*, No. 3:23-MC-00062 (W.D. La. Aug. 8, 2023).
[35] *See, e.g.*, Ex. 28, Email from Zachary Moseley to Honorable Judge Terry A. Doughty, R. Doc. 12, *In re McClenny Moseley & Assocs. PLLC*, No. 3:23-MC-00062 (W.D. La. June 22, 2023).

Morris Bart's suit for a declaratory judgment that MMA's Attorney Employment Contracts with these Morris Bart-MMA Clients are absolute nullities is therefore ripe for determination by this Court. And as the summary judgment evidence shows, there can be no genuine dispute that the MMA Attorney Employment Contracts are absolute nullities because they are illegal contracts procured in violation of law and public policy, such that Morris Bart is entitled to judgment as a matter of law on its request for a declaration as to the absolute nullity of those contracts.

**LAW & ARGUMENT**

**I.     Summary judgment standard.**

Summary judgment "is appropriate when the pleadings, the discovery, and any affidavits show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Connelly v. Veterans Admin. Hosp.*, 23 F. Supp. 3d 648, 654 (quoting FED. R. CIV. PROC. 56(a)). Claims seeking a declaratory judgment as to the validity of contracts present questions of law appropriate for resolution on summary judgment. *See City of New Orleans v. West Coast Liquidators*, No. 96-3512, 1996 WL 715520, at *2 (E.D. La. Dec. 11, 1996).

**II.    Attorney Employment Contracts procured via the Apex scheme or the Velawcity scheme are absolute nullities.**

In Louisiana, when a contract "violates a rule of public order, as when the object of a contract is illicit or immoral," that contract "is absolutely null." LA. CIV. CODE art. 2030. Contracts that are absolutely null cannot be confirmed, and any performance rendered under a contract that is absolutely null because of its illicit or immoral cause may not be recovered by a party who knew or should have known of the defect that makes the contract null. *Id.*; *see also* LA. CIV. CODE art. 2033. Absolutely nullity of a contract may be invoked "by any person." LA. CIV. CODE art. 2030; *see also Gaspard v. Offshore Crane & Equip.*, No. 94-261, 1998 WL 388597, at *4 (E.D. La. July 8, 1998) ("If LOIA [the Louisiana Oilfield Indemnity Act] creates only a relative

Morris Bart's suit for a declaratory judgment that MMA's Attorney Employment Contracts with these Morris Bart-MMA Clients are absolute nullities is therefore ripe for determination by this Court. And as the summary judgment evidence shows, there can be no genuine dispute that the MMA Attorney Employment Contracts are absolute nullities because they are illegal contracts procured in violation of law and public policy, such that Morris Bart is entitled to judgment as a matter of law on its request for a declaration as to the absolute nullity of those contracts.

**LAW & ARGUMENT**

**I.     Summary judgment standard.**

Summary judgment "is appropriate when the pleadings, the discovery, and any affidavits show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Connelly v. Veterans Admin. Hosp.*, 23 F. Supp. 3d 648, 654 (quoting FED. R. CIV. PROC. 56(a)). Claims seeking a declaratory judgment as to the validity of contracts present questions of law appropriate for resolution on summary judgment. *See City of New Orleans v. West Coast Liquidators*, No. 96-3512, 1996 WL 715520, at *2 (E.D. La. Dec. 11, 1996).

**II.    Attorney Employment Contracts procured via the Apex scheme or the Velawcity scheme are absolute nullities.**

In Louisiana, when a contract "violates a rule of public order, as when the object of a contract is illicit or immoral," that contract "is absolutely null." LA. CIV. CODE art. 2030. Contracts that are absolutely null cannot be confirmed, and any performance rendered under a contract that is absolutely null because of its illicit or immoral cause may not be recovered by a party who knew or should have known of the defect that makes the contract null. *Id.*; *see also* LA. CIV. CODE art. 2033. Absolutely nullity of a contract may be invoked "by any person." LA. CIV. CODE art. 2030; *see also Gaspard v. Offshore Crane & Equip.*, No. 94-261, 1998 WL 388597, at *4 (E.D. La. July 8, 1998) ("If LOIA [the Louisiana Oilfield Indemnity Act] creates only a relative

nullity . . . Seacor, as an unrelated third party, would have no standing to complain. On the other hand, if LOIA creates an absolute nullity, then . . . Seacor has standing to challenge the legality of Nabors's decision to honor the 'absoutely null' agreement.").

Here, the Attorney Employment Contracts MMA procured through its Apex and Velawcity schemes are absolute nullities for multiple reasons. Initially, the procurement of these contracts violated the Louisiana Rules of Professional Conduct. For example, Louisiana Rule of Professional Conduct 5.5 prohibits lawyers from assisting others in the unauthorized practice of law. Here, MMA assisted Velawcity and Apex in the unauthorized practice of law by having both entities act as MMA's agent to take actions which violate Louisiana Revised Statutes § 37:213 (prohibiting the practice of law by any person who has not been licensed and admitted by the Louisiana Supreme Court).[36] *See* LA. REV. STAT. § 37:212(a)(2)(b) (defining "the practice of law" to include "[i]n behalf of another, the drawing or procuring, or the assisting in the drawing or procuring, or a paper, document, or instrument affecting or relating to secular rights). Separately, Louisiana Rule of Professional Conduct 7.4 prohibits attorneys from engaging in runner-based solicitation or from collecting a fee from any clients who were procured through an agent's solicitation, such that MMA would be prohibited from collecting fees from clients who its agents, Apex and Velawcity, solicited.[37]

---

[36] Neither Apex nor Velawcity is a person, professional association, professional corporation, or limited liability company entitled to practice law in Louisiana. *See* Ex. 29, Apex Roofing and Restoration, LLC -Louisiana Secretary of State Business Filings; Ex. 30, Tort Network, LLC - Arizona Corporation Commission Entity Information.

[37] *See, e.g.*, *In re O'Keefe*, 877 So. 2d 79 (La. 2004) (per curiam) (permanent disbarment for engaging in runner-based solicitation and for criminal conviction for stealing money from an insurance company); *In re Goff*, 837 So. 2d 1201, 1206 (La. 2003) (per curiam) (stating that "engaging in runner-based solicitation is one of the most serious professional violations an attorney may commit."); *In re Grand*, 778 So. 2d 580 (La. 2001) (per curiam) (disbarment for using runners and for criminal conviction); *In re Lockhart*, 795 So. 2d 309 (La. 2001) (three-year suspension for role in a runner scheme).

Other jurisdictions similarly prohibit lawyers from engaging in soliciting clients via runners. *See, e.g.*, Tex. Disciplinary R. of Prof'l Conduct 7.03; Ga. R. of Prof'l Conduct 7.3; *see also In re Sinowski*, 720 S.E.2d 597 (Ga. 2011) (per curiam) (disbarring attorney for "egregious" misconduct of paying runners to secure clients and paying those non-lawyers for the referrals); *Rubenstein v. Statewide Grievance Comm.*, No. CV020516965, 2003 WL

Moreover, the Attorney Employment Contracts procured through Apex and Velawcity were obtained in violation of rules of public order. The Louisiana Third Circuit Court of Appeal explained in *Gray v. Atkins*, 331 So. 2d 157, 164 (La. App. 3 Cir. 1976) that contingency fee contracts procured using "runners" like Velawcity and Apex are absolute nullities. In *Gray*, plaintiff Pamela Gray's husband died on an offshore oil platform. A few weeks after the incident, two private investigators, Dugas and Mire, visited Gray and advised her that she "probably had a legal claim" arising from her husband's death, which they could investigate for her. This visit resulted in a contract pursuant to which Gray agreed to ask Dugas "to recommend an attorney to represent" her. *Id.* at 159. Dugas and Mire obtained a lawyer who Gray engaged pursuant to a 33% contingency fee arrangement, but later recommended that she change to an attorney named Atkins for the same fee. Gray therefore signed an "Attorney Contract of Employment" with Atkins. *Id.* at 161.

Gray eventually sued Atkins for wrongfully withholding funds from a settlement payment, and judgment was rendered in her favor. *Id.* at 159. On appeal, considering the validity of the contract between Atkins and Gray, the Third Circuit explained that Dugas and Mire engaged in the unauthorized practice of law when they advised Gray "that she had a legal claim . . . in the hope that she would employ them to assist her in prosecuting that claim." *Id.* at 164. Atkins, in turn, "actively assisted and conspired with Dugas in the latter's illegal practice of law." *Id.* at 165. The Third Circuit found that because Atkins and Dugas "conspir[ed] to practice law together when Dugas was not legally authorized to do so," pursuant to an "illegal relationship" in contravention

---

21499265, at *11 (June 10, 2003) ("[T]he Pennsylvania Supreme Court, in considering several ethics rules violations, including that of soliciting clients through an 'investigator,' has found that such conduct breached attorneys' ethical duties and violated the public trust"); *In re Pajerowski*, 721 A.2d 992, 518 (N.J. 1998) ("Today lawyers are allowed to advertise and solicit business subject to reasonable regulations. Nonetheless, when an attorney pays a runner to solicit clients, numerous problems arise that adversely affect the public, the bar and the judicial system.").

of "the preservation of public order or good morals," the contingency fee contract between Gray and Atkins was "null and void as being in contravention of a prohibitory law and Contra bonos mores." *Id.* at 166.

Here, Velawcity and/or Apex, like Dugas, advised potential clients, such as Michael Beitzel, Charles Falgout and other Morris Bart-MMA clients, that they could pursue claims for hurricane damages. Velawcity did so with the hope that it would thereafter obtain a fee from MMA for delivering the client, and Apex did so with the hope that it would benefit from a portion of any fee recovered by the potential client. MMA actively assisted Velawcity by contracting to pay Velawcity for procuring clients on a "per contract" basis and allowing Velawcity to manage the "call center" to which any potential client responding to an MMA ad or solicitation would be directed. And MMA actively assisted Apex by utilizing contingency fee contracts signed by Apex "on behalf of" homeowners to negotiate with those homeowners' insurance companies. As "insurance is an industry affected with the public interest,"[38] the Commissioner has already determined that through the Apex scheme, MMA was knowingly defrauding consumers, including but not limited to the Morris Bart-MMA Clients.[39] And, because MMA is prohibited from practicing law in Louisiana, the Commissioner has stated that the letter of representation sent by MMA to insurers, like Michael Beitzel Charles Falgout and other Morris Bart-MMA clients, is not valid.

Therefore, any Attorney Employment Contracts arising out of the illegal relationships between MMA and Velawcity and MMA and Apex are absolute nullities because they violated Louisiana law prohibiting payment in exchange for procuring clients and prohibiting the practice

---

[38] LA. R.S. § 22:2.
[39] *See generally* Ex. 3, Cease and Desist Order and Notice of Fine, at Findings of Fact, Louisiana Dep't of Ins. (May 1, 2023).

of law by those not licensed to do so. And because those contracts are absolute nullities, MMA is "not entitled to recover attorney's fees for the services which [it] may have rendered" in connection with the Attorney Employment Contracts. *Gray*, 331 So. 2d at 166. Nor is MMA—a law firm now prohibited from practicing law in Louisiana—entitled to recovery of any expenses incurred in connection with the Attorney Employment Contracts, because under Louisiana law, MMA cannot be rewarded by reimbursement of expenses flowing from an illegal scheme. *See* LA. CIV. CODE art. 2033.[40] There can be no genuine dispute that Morris Bart is therefore entitled to judgment as a matter of law on its request for a declaration that MMA's Attorney Employment Contracts procured through Apex and Velawcity are absolute nullities.

## CONCLUSION

For the foregoing reasons, Morris Bart respectfully requests that this Court grant its Motion for Summary Judgment and enter summary judgment in their favor that Morris Bart is entitled to a declaratory judgment as a matter of law that MMA's Attorney Employment Contracts with clients who are now represented by Morris Bart that were procured through either Apex Roofing and Restoration Company, LLC ("Apex") or Tort Network, LLC (d/b/a "Velawcity") are absolute nullities.

---

[40] To the extent that MMA incurred Complaint filing fees associated with Morris Bart-MMA Clients, Morris Bart proposes that upon a successful recovery of a Morris Bart-MMA Client's case, the $450 filing fee reimbursement could be placed into the registry of the Court and utilized for an appropriate purpose, such as reimbursing additional expenses incurred by the Clerk's office or Court staff and/or contractors who were forced to expend countless resources in the response to MMA's misconduct. This would prevent Morris Bart from receiving any type of windfall while simultaneously preventing MMA from receiving even the slightest reward for its misconduct.

Dated: August 14, 2023

                        Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
-------------------------------------
Kerry J. Miller (La. Bar No. 24562), T.A.
Rebekka C. Veith (La. Bar No. 36062)
Carly E. Jonakin (La. Bar No. 40412)
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Counsel for Morris Bart, L.L.C.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading was filed via CM/ECF on August 14, 2023, which sent electronic notice to all counsel of record.

/s/ *Kerry J. Miller*
-------------------------------------
**KERRY J. MILLER**

13